SHERROD KEATON et al. *v.* ROBERT G. MILLER, Admr., &c.

1. CHANCERY: MARSHALLING OF ASSETS, WHERE ONE PARTY HAS A DOUBLE SECURITY.—Where one party has a lien or interest in two estates, and another has a lien or interest in one of these estates only, the latter is entitled, if it be necessary to the enjoyment of his rights, to force the other to seek satisfaction out of that estate to which his lien or interest does not extend, if this can be done without prejudice to him who has the double security; and this rule applies as well in favor of a volunteer who has acquired an interest *bona fide*, and on a meritorious consideration, in one of the estates, as in favor of a creditor or purchaser for value. See *Pollen* v. *The Agricultural Bank*, Freeman's Ch. R. 419–424, S. C. 8 S. & M. 357; 1 Story's Eq. § 559; *Aldrich* v. *Cooper*, 8 Ves. 388.

2. SAME: SAME: GIFT: CASE IN JUDGMENT.—Where the grantor, in a deed in trust given to secure the payment of a debt, afterwards gives to his daughter, upon her marriage, a part of the personal property so conveyed, the donee will acquire a good and perfect title to the donation, subject only to the superior

Keaton et al. *v.* Miller.

right of the creditor, notwithstanding there may be a stipulation in the deed in trust, that the grantor shall not part with the possession except to the trustee, when a sale shall become necessary.

3. SAME: PLEADING, AND VARIANCE: CASE IN JUDGMENT.—A complainant, in a bill in equity, may prove less than he claims in his bill, if it be of the same nature, and conduce to establish the right claimed in the bill; and hence, under an allegation of payment in full, he may prove partial payment, especially if he prays for relief with reference to that state of the proof.

4. SAME: SAME: PARTY NEED NOT PROVE HIS TRUST CHARACTER UNLESS IT BE DENIED.—A party suing as administrator, &c., is not required to prove his title to that character, either at law or equity, unless it be denied by the other party under oath.

5. HIGH COURT: EFFECT OF DECISION OF CHANCELLOR ON EVIDENCE: CASE IN JUDGMENT.—Where the testimony is conflicting, and a material part of it was given by personal examination in open court before the chancellor, and the veracity of some of the witnesses is directly questioned, by the testimony of other witnesses examined to that point, this court will not pronounce the decision of the chancellor upon its weight erroneous, unless the error is very clearly shown by a consideration of all the evidence.

APPEAL from the Chancery Court of Monroe county. Hon. Joel M. Acker, chancellor.

The substance of the bill is stated in the opinion of the court. The creditors in the deed of trust were, together with Keaton the grantor, made parties defendant.

James T. Harrison, one of the creditors, did not answer, his debt having been paid, as appears by the answer of the other defendants.

Overton Harris and Keaton demurred, as stated in the opinion, and afterwards answered. Harris set out in his answer the debts that were unpaid, and denied any knowledge of the alleged gift. Keaton denied the gift, and alleged that the slave was sent to complainant and wife as a loan.

On this issue a great deal of testimony was taken on both sides, including an examination of the parties themselves personally before the chancellor; but it is unnecessary to set it out.

On final hearing, a decree was rendered, which recited that the chancellor was of opinion that Keaton gave the slave to complainant's wife in March, 1851, and that he had tortiously regained possession of her in September, 1851, and that it was shown to the

satisfaction of the chancellor that the property conveyed by the trust deeds remaining in possession of Keaton, was more than sufficient to pay the debts secured by them and remaining unpaid ; and thereupon it was adjudged that the complainant recover possession of the slave and her increase and hire, and that the title acquired by the defendants under the deed of trust be divested out of them, and vested in complainant as administrator of his wife.

From this decree the defendants Harris and Keaton appealed.

*Sale* and *Phelan* for appellants.

1. The complainant is a mere volunteer, and as such has no right to the interposition of the court to interfere with the prior vested rights of the purchasers under the trust deed. See 2 Leading Cases in Equity, part 1, p. 203, and 187, 234; Brock, R. 281; 1 Story's Eq. §§ 565, 633, 642; 1 Speer's S. C. Eq. R. 525; Cross on Liens, 190; Adams's Eq. 506, 507; 19 John. R. 493; 1 H. Bl. R. 124, 136, 150; 1 P. Wms. R. 695; 6 Ves. 713; Eden on Injunctions, Ch. 2; 2 Tuck. Com. 481; 8 Ves. 382.

2. The complainant is the mere assignee of an equity, and in such a case he must show that his interest is really valuable. The facts stated in the bill in connection with the prayer, leave it uncertain whether after all has been done which he asks, it may not turn out that he will get nothing. See Calvert on Parties, 241.

3. The deeds of trust show that Keaton was to retain possession as the agent of the creditors. He could not violate this agreement by parting with possession, and thereby convey a good title on another.

4. There is a variance between the bill and the proof. The bill alleges total satisfaction of the debts. The proof shows that this is untrue, and that there are debts yet due. This is fatal, under the repeated decisions of the court. See *Bowman* v. *O'Reilly*, 31 Miss. R. 261; *Fatheree* v. *Fletcher*, Ib. 265.

5. There is no proof of the character in which complainants sue.

6. The proof is insufficient to sustain the decree.

*Dowd & Sykes* and *Houston & Reynolds* for appellee.

1. The complainant is entitled to the relief sought, whether he be a volunteer or not. See Story's Eq. §§ 558, 559, 633; 5 John.

Ch. R. 235, 239, 240; *Harvey* v. *Woodham,* Select Cases in Chancery, 3, 4; *Gill* v. *Lyon,* 1 John. Ch. R. 447; *Conrad* v. *Harrisson,* 3 Leigh R. 352; *Aldrich* v. *Cooper,* 8 Ves. 394; 9 Ib. 209.

2. The gift of the slave upon marriage is upon a valuable consideration; and our statute securing the property to the wife, does not prevent this, as the husband still has a contingent interest in it. See 1 Parsons on Cont. 357; 3 Cow. R. 537; 1 John. Ch. R. 260; 11 Leigh. R. 136; 7 Peters R. 348; *Johnson* v. *Dillard,* 1 Bay's R. 234; *Falconer* v. *Holland,* 5 S. & M. 689; *Moore's Administrator* v. *Downing,* 3 Hen. & Munf. 133.

HANDY, J., delivered the opinion of the court.

The substance of the bill in this case is, that the complainant, who is the appellee here, was married to the daughter of Keaton in the year 1847, and that Keaton, in the years 1848 and 1849, executed three deeds in trust, to secure certain debts due to Overton Harris and to James T. Harrison, and to indemnify the former for certain liabilities incurred by him for Keaton, and conveying, for these purposes, twenty-two slaves, worth about fifteen thousand dollars, and a tract of land worth five thousand dollars; that these deeds in trust, by their terms, were to be void on the payment of the debts and the discharge of the liabilities therein mentioned; which, it is alleged in the bill, have taken place. It is further alleged that in March, 1851, the complainant and his wife went to housekeeping, and that Keaton then sent home with them as a gift to his daughter, a slave named Sythey, being one of the slaves embraced in the deeds in trust above-mentioned; which slave remained with the complainant and his wife until August, 1851, when she died, and shortly thereafter that the slave was decoyed from the complainant's possession whilst he was sick, by Keaton; that there was one child, the issue of the marriage, who survived his mother until November, 1851, when he died; and that the complainant was appointed administrator of his wife, and also of his child. The bill prays for discovery whether the debts mentioned in the deeds in trust, and the liabilities therein indemnified against, have not been paid, and how much of the same remains unpaid, and prays an account thereof, and, if anything be found due on said debts, that said amount be decreed to be paid out of the other pro-

perty mentioned in the deeds before the slave Sythey is subjected to the payment thereof, and that the slave be decreed to the complainant and an account taken of her hire, and for general relief.

To this bill a demurrer was filed and overruled. These grounds of demurrer constitute the first assignments of error, and we will proceed to consider such of them as are relied on to reverse the decree.

The first ground of demurrer is, that the complainant, claiming in right of a mere donee, under a gift of the slave in controversy subsequent to the trust deeds, is not entitled to compel the holders of the deeds to look to the other property conveyed, and to exhaust it before proceeding upon this particular part of the property conveyed. This objection treats the bill as merely showing that the property conveyed in the deeds is more than sufficient to satisfy them, exclusive of the slave in dispute, and disregards the main aspect of the bill, that the deeds in trust are entirely satisfied. But as the bill also presents the aspect in which it is regarded by this ground of demurrer, and as that is the real state of the case as presented by the subsequent pleadings and proofs, the question raised by the demurrer will be considered.

It is insisted, on the part of the appellants, that the claim of the appellee is that of a mere volunteer, who has no right to interfere with the prior vested rights of the beneficiaries in the deeds of trust, or to control their power under their contract to subject any of the property conveyed, to the satisfaction of their claims. It appears to be conceded that, if the appellee was a creditor of the grantor of the deeds in trust, he would be entitled to the relief sought ; but it is contended, that no one claiming under title derived from him, subsequently to the trust deeds, can claim such right, since he must occupy the position of the grantor, and as he could not claim the right, neither can one claiming title under him do so.

If this view were correct, it would exclude all subsequent purchasers for a valuable consideration of a part of mortgaged property, from the right of compelling the mortgagee to exhaust the property mortgaged and still unsold, in the possession of the mortgagor, before proceeding to take such part of the property as was conveyed to such purchaser. But this right is as well established

as anything can be by judicial decision, and cannot admit of controversy.

The question, then, here presented is, whether a person who has *bona fide* acquired title from the grantor, *without valuable consideration*, as a donee, is entitled to the protection of this rule of equity.

The general rule is stated by Lord Eldon in *Aldrich* v. *Cooper*, 8 Ves. 388, as sustained " by all the authorities," to be " that, if a party has two funds, a person having an interest in one only has a right in equity to compel the former to resort to the other, if that is necessary for the satisfaction of both." This does not proceed upon the reason that the person asking the protection has a claim founded on a valuable consideration, such as a creditor or subsequent purchaser for value; but it is founded on the principle of natural justice, that a man shall not exercise the right which he possesses so as to injure the right of another, if he can fully enjoy his own right without such injury to another. 1 Story's Eq. Jur. § 633. It is true that the rule is mostly applied to cases of creditors and subsequent purchasers, because they are the cases which generally call for its exercise. But the reason of it is equally applicable to cases of parties claiming title upon a meritorious consideration, such as commends itself to the favor of a court of equity, like that upon which the present claim is founded. Judge Story says that the rule is " applied to cases of double securities generally;" and, after stating that it is applicable to cases of creditors, he says, " the like rule is applied to other persons standing in a similar predicament." 1 Story's Eq. Jur. § 559. " The cases," says Lord Eldon in the case above cited, " with respect to creditors and other classes of claimants, go exactly the same length. In the cases of legatees against assets descended, a legatee has not so strong a claim to this species of equity as a creditor. But the mere bounty of the testator enables the legatee to call for this species of marshalling." Surely a gift by a parent to a child upon marriage stands upon such a meritorious consideration as to entitle it to the protection of a court of equity, and comes fully within the reason of this equitable rule.

The general rule is well stated by the chancellor in the case of *Pallon* v. *The Agricultural Bank*, Freeman's Ch. Rep. 419–424;

thus: "The general principle is, that where one party has a lien on, *or interest in,* two estates, and another has a lien on or *interest in* one of those estates only, the latter is entitled to throw the former upon that estate which he cannot reach, if that be necessary to adjust the rights of both parties, and can be done without prejudice to him who holds the double security." And the view taken of the case was regarded as correct by this court when it was brought here by appeal: S. C. 8 S. & M. 357; and the general doctrine is there sanctioned. It is true that it is there said that the interposition of equity presupposes that the party seeking it is a purchaser in good faith and for a valuable consideration. But this is said with reference to the peculiar facts presented in that case; which were, that the complainant was the first purchaser of part of the property of a judgment debtor, who subsequently conveyed other parcels of his property to other purchasers, the judgment being a *lien* as well on that purchased by the complainant as on the parcels subsequently purchased by others; and the relief sought was that the judgment should be first enforced against the property last conveyed until it was exhausted, before subjecting that purchased by the complainant. In such a case, and with reference to the rights of the subsequent purchasers for a valuable consideration, it was essential to the relief sought, that the complainant should have been a purchaser in good faith and for a valuable consideration; for, as the judgment bound all the debtor's property for its satisfaction, a mere voluntary conveyance to the complainant would have been a fraud upon the subsequent purchasers, and his claim would have been postponed to their equity. But the language of the court must be understood with reference to the case before it, and not as declaring the rule that the general equitable principle can be applied to no case except that of a purchaser for a valuable consideration; for that would exclude from its operation the claims of subsequent creditors, which, it is admitted, are embraced by it.

We, therefore, think that the decision of the court below was correct upon this ground of the demurrer.

The next ground of demurrer is, that the equity of the complainant is uncertain, and that the bill does not sufficiently show that his equitable claim to the slave will be of any value to him, if it be decreed to him as prayed.

Keaton et al. *v.* Miller.

There appears to be no just ground for this objection to the bill. Its positive allegation is, that the claims under the trust deeds are entirely satisfied and discharged. In that aspect, it is clear that the relief sought would be certain and positive: a decree declaring the deeds satisfied, and ordering them to be cancelled, and establishing the title of the complainant to the slave. But if the debts and liabilities should not be entirely discharged, then the prayer is that the other property should be first subjected until they should be discharged. Taking the allegations of the bill as true, as the demurrer admits them to be, the relief sought is beyond question. And the prayer, which looks to the contingency that the debts and liabilities secured by the trust deeds may not be entirely paid and discharged, is a mere prayer in the alternative, which, upon demurrer to the bill, cannot render the bill insufficient, where its allegations show a ground for certain and positive relief upon the main aspect of the bill.

Again, it is insisted that the demurrer was well taken on the sixth ground stated in it, which is, that by the terms of two of the trust deeds, Keaton remained in possession of the slaves mentioned in them as the agent for the creditors secured, to employ them for the benefit of the trusts, and apply the proceeds of their labor to pay the debts secured, and was prohibited by the terms of the deeds from removing them from the premises. It is insisted, therefore, that the alleged gift and delivery of possession of the slave in controversy, was in violation of the duty of the agent and of the rights of the creditors, and that it conferred no right or title upon the wife of the complainant.

But the deeds also provide, that the trustee appointed by them was only to take actual possession of the slaves upon default made by the grantor in the payment of the debts secured. And although in strict law the legal title was conveyed to the trustee, yet the trusts upon which it was held show that the deeds were mere securities for the debts, and that the title was only to be asserted upon default in the payment of them. Equity regards such instruments as mere securities for debts, which will only be enforced for the purposes for which they were intended, and will never be allowed to be abused to the prejudice of the grantor, or of those who may acquire subsequent rights to the property under him.

Considering the deeds in this light, the bill states that the slave in controversy was given by the grantor after the execution of the deeds, and of course subject to them, if necessary for the payment of the debts. It is clear that the grantor had an equity in the property before the payment of the debts, and he had the right to convey his interest to another person. No available title might have passed by the conveyance while the deeds remained unsatisfied; and possibly the trustee might have compelled the slave to be taken from the possession of the complainant's wife, and restored to the keeping of the grantor. But when the deeds were satisfied, the title of the complainant's wife would have become effectual, and the deeds inoperative. Now the bill alleges that the deeds are satisfied, and this is admitted by the demurrer. Therefore it is clear that, as the case is presented by the demurrer, neither Keaton nor the creditors can be permitted to object to the title of the complainant, on the ground that he had no authority to dispose of the slave; for Keaton cannot be heard to say that he had no power to make the conveyance; and, according to the statements of the bill, the creditors are satisfied and the liens of the deeds discharged; and they, therefore, have no right to question the validity of the complainant's title. Hence, this ground of demurrer was properly disallowed.

The next error assigned is, that the proof does not correspond with the allegations of the bill, inasmuch as the bill alleges that the debts secured in the deeds in trust have been entirely discharged, and the answer and proofs show that there was still a balance due upon them.

It is true, the bill alleges that the debts are entirely paid; but it prays that an account be taken, and if there was found to be due anything, that a sufficiency of the property be sold to pay the same, and that the slave Sythey and her increase be decreed to the complainant, &c. If the debts were found, upon taking the account, to be entirely paid, the deeds would have been declared satisfied, and the slave decreed to the complainant; but if there was found due a balance upon the debts, then the prayer was, that other property than this slave should be applied to their payment, and the slave exonerated from the trust deeds; so that whether the debts were paid entirely, or a balance was due upon them, the allegations

of the bill are sufficiently comprehensive to authorize such a decree as would *secure the slave to the complainant discharged of the trust deed*, which is plainly the object and scope of the bill. The prayer of the bill is in substance, then, in the alternative, and whether the debts were paid in whole or in part, plainly looking to the exoneration of the slave from the operation of the deeds in trust. The allegations are broader than the proof; yet the proof is sufficient to sustain the allegations so far as to justify the relief prayed. It is the rule in equity, as at law, that under an allegation of payment in full, the party claiming a right upon it may show a partial payment, especially if he prays relief with reference to the state of case which is made out by the proof. He may prove less than he claims in his bill, if it be of the same nature, and conduce to establish the same right as that claimed in the bill. Gresley's Eq. Ev. 239; *Dease* v. *Moody*, 31 Miss. 617.

This objection, therefore, is not tenable.

Again, it assigned for error, that the character of the complainant as administrator, as stated in the bill, is not admitted by the answer, and should have been sustained by proof, and yet there is no proof adduced to show that he was appointed administrator, and, therefore, that the bill was not sustained by proof, and the decree should be reversed.

This objection is obviated by the statute dispensing with proof of the character of parties suing at law or in equity, unless the description of character stated in the declaration, bill, or other pleading, be denied under oath. Hutch. Code, 852, § 4. There is no such denial here, and of course the complainant was not required to prove that he was administrator.

The last error assigned is, that the proof does not establish a gift of the slave by the appellant Keaton to the wife of the complainant.

Upon this point, it is sufficient to say that the testimony is conflicting, and a material part of it consisted of personal examination in open court, before the chancellor. Its weight depends much upon the credit due to the various witnesses, whose veracity was questioned by the testimony of witnesses examined to that point. And as a material part of it was delivered orally in open court, affording to the chancellor means of judging of its correctness

which we do not possess, we could only pronounce his decision upon its weight erroneous, when that conclusion was rendered very clear by all the evidence.

But upon an examination of the testimony, we think that it well warrants the conclusion that the slave was delivered by Keaton to his daughter, after her marriage, as a gift, and that the claim of the complainant is sustained.

Let the decree be affirmed.