47  289
72  615

## GEORGE S. KAUSLER et al. v. JAMES C. FORD et al.

1. CHANCERY—LIEN.—The assignment of a note protected by a lien, expressly reserved in a deed conveying real estate, carries with it the lien so reserved.

2. SAME—NOVATION.—The novation of a debt, or any part of a debt, secured by an express lien upon real estate, by the substitution therefor of a new note given by the vendee of the lien debtor, does not discharge the lien, but the security follows so long as the original debt, or any part of it, can be traced into the new note.

3. SAME—PAYMENT.—Before an express lien, reserved in a deed to real estate, as security for a debt, can be extinguished by the execution and delivery to the lien creditor of a note given by the vendee of the lien debtor, it must be shown that the intent of the parties, in putting the debt in the new shape, was to work an extinguishment.

4. SAME—SUCCESSIVE SALES.—If the lien debtor sell off at different times the encumbered property, it will be liable to the creditor holding the lien, in the inverse order of the alienation; and the first purchaser may, through the chancery court, remit the creditor to the property of purchasers subsequent to himself, and force him to obtain satisfaction, beginning with the property of the last purchaser; and the property of the first purchaser can only be subjected to the payment of the balance left after the property of all the purchasers has been exhausted.

5. SAME—CASE IN JUDGMENT.—B. agreed to purchase lands from D. and F. for $17,000, part cash and balance in four annual installments, on the 3d February, 1857, the vendors retaining the lien to secure the payment of the purchase money. The agreement was consummated in February, 1858, by the execution and delivery of a deed and notes for the deferred payments. D. and F. retained and reserved, upon the face of their deed, an express lien for the purchase money. The deed was properly acknowledged and recorded. In August, 1859, B. sold a half-interest in the property to G. K., and received payment therefor in full. In October, 1860, he sold the other half-interest to J. K., taking his notes for the purchase money, and retained a lien in his deed to secure their

payment. By a verbal arrangement between the parties, subsequently made, B. trans-ferred to D. and F. the notes of J. K., indorsed without recourse, to the amount of $14,880, and gave them his own note for the balance due them of $3,830.38, specifying in it, that it was for the balance of the purchase money due upon the land, and with them took up the original notes for the purchase money of the land then held by D. and F. *Held,* That D. and F. had a lien upon the whole property to secure the payment of all the notes given them by B. in lieu of the notes originally executed for the pur-chase money of the land, but must proceed first against the half of the land sold to J. K., and only resort to the other half sold to G. K. for the balance that would remain unpaid after its sale.

APPEAL from chancery court of Hinds county, 1st district. CABANISS, Chancellor.

The opinion of the court contains a sufficient state-ment of the case.

*Nugent & Yerger,* for appellants,
Contended, that, the attempt being to subject the land to pay a note, which it is insisted was given in lieu of the lien note, but with a reservation of the lien, it must be proven that the note was given with the express reservation of the lien; and this must be brought to the express knowledge of George Kausler. That, as a legal implication and presumption, that in a case where it is shown that Ford and Downing's vendee has surren-dered to him his original lien note, giving a note of a different description, and due at a subsequent date, and this prior to the maturity of the original note, it would be presumed an abandonment of the lien as against pur-chasers making payment in good faith and without the knowledge that it was the intention between the parties to preserve the lien as to the substituted note.

Which of the two pieces of property is to be first charged? Where a judgment debtor has various pieces of property affected by the judgment lien, if he alienate one piece, it is not charged until the others not alien-ated have been subjected, provided they still remain within reach of the execution. If all be alienated then each is liable to the satisfaction of the judgment in the

inverse order of alienation, the last alienated being first liable.    Agricultural Bank v. Pullen, 8 S. & M. 357.

*Frank Johnston,* on same side.

The demurrer to the bill should have been sustained.

The 7th and 9th grounds of demurrer will be considered together.

James C. Ford, and A. Downing, deceased, in his lifetime sold the entire tract of land to Buck, now deceased, for $3,000 in cash, taking his notes for the unpaid purchas money, payable in installments, respectively on 2d of February, 1861, 2d of February, 1862, and 2d of February, 1863.    Buck also gave separate notes for the interest, the last maturing on the 2d February, 1861. The legal title remained in Ford.    It was provided in the contract of sale that Downing was to procure from Ford and deliver to Buck within a reasonable time a warranty deed to the land.

All the notes were past due when the bill was filed. The complainants do not aver in their bill that a deed had ever been delivered or tendered to Buck in his lifetime, or to his heirs since his death; but they pray discovery from the defendants on this point.    After the maturity of all the notes, the covenant to pay the purchase money, and the covenant to execute and deliver the deed, were mutual and dependent.

On this point I cite Wadlington v. Hill, 10 S. & M. 662; 1 Pet. 465; 2 Ired. 277; 7 How. (Miss.) 172.

It was necessary, therefore, for complainant, in order to present a case for equitable relief, to have averred a delivery or tender of a warranty deed from Ford.    Can their failure to aver a necessary and material fact be cured by the prayer in their bill for discovery from the defendants?

It is submitted that they cannot remedy the defect in their pleading.    The legal title was in Ford.    He was one of the complainants, and the fact as to the

delivery of the deed rested within his personal knowledge. The delivery or tender of the deed was a distinct fact to be stated, and was essential to the relief prayed in the bill.

The 6th, 10th, 11th and 12th grounds of demurrer will be considered in the same connection.

The original agreement between Buck, Downing and Ford was materially modified by a subsequent agreement, to which George Kausler was not a party, by which the security held by Downing and Ford was changed. This, it is insisted, operated a release of George Kausler's half-interest in the land.

As to the effect of the waiver of liens and change of security, I refer to 2 Washb. 90 and 91, and 43 Barb. 29.

The bill on its face fails to show a case for relief in equity, and should have been dismissed.

I next insist that the final decree was erroneous on three distinct grounds.

First. It was agreed between Downing and Ford and Joseph Kausler and Buck, that the latter was to pay his entire debt to Downing and Ford by an assignment to them of a portion of the Joseph Kausler notes then held by Buck. The assignment was to be "without recourse," and was to have the effect of a payment of Buck's indebtedness. This agreement was fully established by the evidence in the cause. The evidence also explains the reasons why this arrangement was but partially executed. There was nothing inequitable in the agreement, and it should have been carried into effect by the decree of the chancery court.

Secondly. The notes held by Hamilton, the administrator of Buck, deceased, were general assets in his hands. The estate had been declared insolvent, and this fact is stated in the bill. Complainants had no lien on these notes, or any lien upon, or any right to appropriate, to their claim, any money collected on these notes. And yet the decree directs that the *pro rata*

share of Hamilton, administrator of the fund arising from the sale of the land, should be applied to the payment of the notes held by the complainant. This was clearly erroneous.

Thirdly. George Kausler, who was the last purchaser from Buck, had the right to require that the entire proceeds arising from the sale of Joseph Kausler's half-interest should be applied to the extinguishment of the complainants' lien, before his interest was resorted to for the payment of the debt due the complainants. On this point I call the attention of the court to Story Eq., § 1233, *b*. The benefit of this principle was denied him by the chancellor. For these reasons, I submit that the decree of the chancellor should be reversed, and the proper decree rendered by this court.

*Shelton & Shelton*, for appellees.

I. Complainants can enforce the lien on Joseph Kausler's interest in the land to pay Joseph Kausler's notes held by him, because an assignee can enforce an express lien reserved on the face of the deed. 40 Miss. 778; 41 ib. 490; 42 ib. 397, 793.

II. Complainants can enforce the lien on the whole tract to pay R. L. Buck's note for about $3,800, given February 12th, 1861, for the balance of the purchase-money after transferring Joseph Kausler's two notes to Ford. Because, 1. It is no waiver of even an implied vendor's lien to renew the note of the vendee for a balance of the purchase-money unpaid; 2 Washb. Real Prop. 90; 23 Ga. 237; 3 Russ. 488; 32 Miss. 333. 2. When by agreement equitable security is reserved for payment of a debt, nothing will release that security but the payment or discharge of the debt. Washb. Real Prop. 91. 3. George Kausler is not entitled to protection as a purchaser for a valuable consideration, without notice.

III. If the written contract of February 12th, 1861,

be permitted to stand and be in force as executed by the parties thereto, there can be no controversy on Buck's note for $3,800, in which Ford is involved. The transfers and note bear the same date, February 12th, 1861. To the extent, therefore, of said note, the original note from Buck to Ford & Downing existed after February 12th, 1861, and the equitable mortgage expressly reserved in the deed of Ford & Downing to Buck continued in force as security for that note. For it is no waiver of a lien or equitable incumbrance to renew the note. Nothing will release it but payment or discharge of the debt. 2 Washb. Real Prop. 90, 91; 21 Ga. 237; 3 Russ. 488; 2 Ga. 333.

IV. Unless, then, the written settlement of February 12, 1861, be discarded, some person must pay Buck's note for $3,800 to Ford & Downing. The only question is, shall it be paid out of George Kausler's interest in the land, or out of Dr. Buck's distributive share of the money going to him under the decree above. Upon that question complainants are indifferent, the only controversy is between George Kausler and Dr. Buck's estate, as to which it shall be. But as between these the equity is palpable. George Kausler has paid Dr. Buck every dollar of the purchase money for his half-interest in the land. Dr. Buck is, therefore, bound to protect him against his own debt creating an incumbrance on the land. The fund in court going to Dr. Buck's estate, will have been raised on the other half of the land, which is equally covered by Buck's debt and incumbrance to secure it. Shall Buck take that fund and have Kausler to pay the debt? The equity is palpable; Buck's estate should pay it out of their distributive proportion.

V. Should the writings of February 12, 1861, have been disregarded and the decree based on the proof, above a preliminary (or cotemporaneous) verbal understanding materially different, let us see what is pro-

posed to be done.  On the 12th February, 1861, Buck
made special written assignments to Ford & Downing
of two of Joseph Kausler's notes, and made and
delivered to Ford & Downing his promissory note of
same date, due in 1865, expressing upon its face that
it is for the balance of the debt owed by him to
Ford & Downing for the balance of the purchase
money of said tract of land, to wit, say $3,800, and
which he, by that written note, promises to pay to them
on the day of its maturity, four years thereafter.  For
these, Ford & Downing gave up the notes of Buck,
previously held by them.  This was an executed contract
in all its parts, executed in writing.  Defendants sought
to supersede it by a preliminary (or cotemporaneous)
understanding to the effect that the verbal and real
arrangement was, that one of Joseph Kausler's notes,
still held by Buck, was to be divided, and Ford &
Downing were to receive, as he had done the other two,
Kausler's note, for the amount due from Buck to them,
and they, defendants, claim that that verbal under-
standing shall be enforced by this court as superseding
Buck's note for $3,800, which they ask the court to
disregard, and render a decree on the alleged parol
agreement.  The note is, as to this, the contract, and
parol proof of a verbal agreement, different therefrom,
will not be heard.  The note is the only exponent of
that part of the agreement.  44 Miss. 146; 41 ib. 619;
1 Greenl. Ev. p. 313, § 577; p. 316, § 281, and note 782.

But it is assumed by defendants that the writings of
February 12th, 1861, are but execution in part of the
verbal agreement; that this court must enforce the
balance of the agreement.

That might do, if nothing had been done on the said
12th of February but the transfer of Kausler's two notes.
It would do, if the writing which was made had ex-
pressed the verbal understanding.  But it will not do,
where the writing which was made expresses a very

different agreement, and still more, it will not do where the written agreement is utterly inconsistent with the alleged verbal agreement. The execution of the note was a decided departure from the alleged verbal agreement. A decree enforcing the alleged verbal agreement will be a decided departure from the obligations of the note. In short, the two are utterly inconsistent with each other. Both cannot stand. The court cannot possibly enforce both.

*T. J. & F. A. R. Wharton,* on same side.

This is not a case of vendor's lien, *eo nomine,* but one of an express lien by contract, and reserved in the face of the original agreement, and that such lien can only be released by payment or discharge of the debt. 2 Washb. Real Prop. 90 ; 23 Ga. 237 ; Hughes v. Kearney, Scho. & Lef. 136. Even in the case of a vendor's lien arising by implication of the law, there is no loss of the lien by a renewal of the vendee's note. The rule would apply much more strongly to the case of an express reservation of lien in the face of the deed of record apprising the world of the existence of the lien. It is the settled rule of law, in cases of vendor's liens, that they can only be waived by taking collateral security, or by an express agreement to that effect. The party disputing the lien must show that the vendor agreed to rest on the other security and to discharge the lien. The principle of equitable lien is founded on the presumed intention of the parties. The law presumes an intention on the part of the vendor to retain his lien for the purchase money, and imposes upon the purchaser the burden of proving the contrary. Dubois v. Neal, 43 Barb. 28 ; Willard's Eq. Jur. 124, 443 ; 1 Paige, 24, 30 ; 1 Johns. Ch. 308 ; 40 Miss. 247. The authorities go to the extent that the circumstances showing that the lien was not intended to be reserved, must be circumstances constituting a part of the contract. A vendor is not to

be deemed to have parted with the premises to the extent of the lien.   4 Kent, 452; Story's Eq. Jur., § 1224.

A purchaser is bound to take notice of all liens shown to exist by his vendor's title deeds, and any notice is sufficient which ought to put a reasonable man on inquiry.   2 Washb. Real Prop. 88, 89; 43 Miss. 260; 40 ib. 778.

SIMRALL, J.:

The 3d of February, 1857, R. L. Buck agreed to purchase from Downing & Ford a plantation in Washington and Issaquena counties, containing 1777 acres, for the price of about $17,000; three thousand dollars to be paid in hand and the balance in four annual installments, represented by promissory notes.   As soon as convenient, Ford, in whom was the legal title, and who resided in Kentucky, was to make a deed of conveyance to Buck.   By the agreement the vendors retained a lien on the property for the consideration money, and the same reservation was to be contained in the deed.   On the 25th of the ensuing February, Ford made the conveyance to Buck, which was recorded in Washington county on the 27th of May, and in Issaquena county on the 18th of June of the same year.   The deed conforming to the written agreement, did distinctly reserve a lien on the property for the deferred payments.   Subsequently, the 1st of August, 1859, Buck sold and conveyed to George Kausler, an undivided half of the land, for which Kausler has made full payment.   Later, the 1st of October, 1860, Buck sold the remaining half of the plantation, also a large amount of personal property, to Jacob Kausler for the price of $36,800, and took his notes for the several installments, five in all.   To secure the debt, all of which seems to have been on a credit, Buck retained a lien on all the property, real and personal.

One or two years after this sale, a verbal arrangement was made between Ford & Downing, Buck and Jacob Kausler, to the effect that Buck should transfer to Ford & Downing the notes of Jacob Kausler, to an amount sufficient to discharge and extinguish Buck's indebtedness to them, then amounting to about $14,000, principal, with interest thereon.    In part consummation of this understanding, Buck did transfer (by indorsement without recourse) to Ford & Downing, two of Jacob Kausler's notes, one for $7,920, due January 1st, 1862; the other for $6,960, due January, 1864.    But as the other notes of Kausler, held by Buck, were both of them largely in excess of the balance due by Buck to Ford & Downing, and as Jacob Kausler was not present at the time of Buck's transfer, the further carrying out of the understanding was postponed until Kausler could divide one of his notes, so as to execute a new note to Ford & Downing for the balance due them from Buck. Buck, in order to close up the transaction as far as practicable, gave his note to Ford & Downing for the balance owing by him, $3,830.38, specifying in it that it was the residue of the purchase money for the land.

James Ford and Downing's administrators, the holders of the two notes of Jacob Kausler, aforesaid, and of Buck's note for the $3,830.38, filed their bill against the parties in interest to the lands, seeking a foreclosure of the lien.

George Kausler claims that he is an innocent purchaser from Buck, without notice of the lien retained by Buck's vendors, and therefore his half of the land should be protected.

For Buck's estate it is claimed that the execution of his note for the $3,830.38, and the agreement therewith, released the lien as against his rights; and, 2d, that the transfer of the notes of Joseph Kausler did not carry with them an assignment of the lien, or a right to participate therein, by the indorsers; and, 3d, that if

wrong in that view, then Buck's estate is entitled to share in the fund *pari passu* with Ford, according to the respective amounts of their debts.

Buck's administrator holds and owns two of Jacob Kausler's notes.

The question is, in what attitude ·will a court of equity regard the several parties to these transactions? Upon what principles shall the respective rights be determined, and what is the measure of redress for the settlement of their respective claims against each other?

The liens reserved by Ford & Downing in the sale to Buck, and by the latter in his sale and conveyance to Jacob Kausler, are express liens, equitable mortgages, and are governed in many respects by different rules from those which apply to the vendor's lien. It has been so repeatedly declared in this court, and the high court of errors and appeals, that the transfer of a note protected by a lien of this sort carries with it the lien also, that it is unnecessary to refer to the cases. The rule is different where the vendor, holding merely the implied lien, transfers the note or debt, which is the consideration of the land.

It may be assumed, therefore, that the assignment by Buck to Ford & Downing invested them with the express lien, which was reserved by Buck as security for the debt. The novation of the debt, or any part of it, by substituting a new note, does not raise or discharge the lien. So long as the original debt, or any part of it, can be traced into the new note, the lien security follows it. The debt is the substantive thing, the note, in the contemplation of equity, is the form and proof of it. Lewis v. Starke, 10 S. & M. 120. To have the effect of extinguishing the lien, it must be shown that the intent of putting the debt in the new form was to. work an extinguishment. Ib. The note of Buck, given for the balance due upon the land, is

entitled to all the benefits of the lien that inured to the original notes. The question becomes one merely of evidence to connect it with the original indebtedness. The testimony in connection with the contents of the note are quite sufficient to satisfy the judgment that it was a continuation of the original debt, and, instead of being given in discharge of the lien, was meant to continue it.

Ford has unquestionably a right to sell the entire tract to satisfy the debt due by Buck's estate, if less than the whole should not pay the debt; for the lien expressed in the deed to Buck extends to the entire estate. But George Kausler bought half the property in 1859, and has paid the consideration money. He claims that being ignorant of the lien against Buck, he ought to be protected. The deed to his vendor, Buck, was recorded nearly two years before his purchase, and was therefore as effectual to charge him with notice of the incumbrance as actual knowledge of its existence.

But we think that George Kausler may invoke another principle of equity successfully to his aid. Buck, when he sold to him, was solvent, and, therefore, perhaps, did not entertain the idea that his vendee's half would ever be needed to make good his debt to Ford & Downing, and hence did not think it worth while so much as to notify him of the lien upon it. The remaining half of the plantation, with Buck's other means, may have been supposed to have been quite enough to meet the debt due to Ford & Downing. It might be, if George Kausler had been informed of the lien; he might have been willing to make the purchase, esteeming the other half of the property and Buck's other resources quite sufficient to meet his debt. In this view of the subject, if Buck had continued the owner of half the property, it would have been the suggestion of natural justice (and such also is the equity doctrine) that Ford should be confined to Buck's

half to realize his money until that was exhausted, and should only go upon Kansler's half for the deficit. When Jacob Kausler negotiated his purchase, the situation of the property was altogether different.   He had knowledge that half of it had been sold to George Kausler, and also that Buck's debt to Ford & Downing was unpaid and was a lien upon the property.   He would look to the value of the land he was about to buy, and the personal property relatively to the amount of Buck's debts, and determine whether it was a safe purchase. His purchase amounted to $36,000, payable in five annual installments.   It was his right to take up Buck's debt to Ford & Downing, and have such payments credited on his debt to Buck.   What was his right independent of contract, was partly effected by agreement?   His indebtedness to Buck more than twice exceeded Buck's to Ford & Downing.   It would be, therefore, equity and good conscience as against him to impose the balance due for the original purchase by Buck on his half the land, and that, too, independent of any agreement that he should directly take up Buck's note by a substitution of his own.   Such is the well-established doctrine of courts of equity.   The principle has received various applications, but it rests on the same essential reason.   As where a creditor has a lien upon or an interest in two funds, and another has a lien upon but one of them, the latter has the right to drive the former to get his satisfaction out of that fund, to which he has an exclusive claim, where it will not prejudice him.   Wiggin v. Door, 3 Sum. 414; Lanny v. Duke Athol, 2 Atk.; 1 Story Eq. Jur., § 633. Nor is there an exception, if one creditor has a mortgage on two estates, and the other upon but one of them.   United States v. Duncan, 12 Ill. 523; United States Ins. Co. v. Shearer, 3 Md. Ch. Decis. 381.

Where there are conflicting interests and equities to the same property, equity will so deal with, and admin-

ister to them, as to mete out equal justice to all parties. Although it may not defeat or postpone the prior equity, it can so limit and apply it as to give to each the measure of right. Ford has an equity senior to that of any other party, which extends to the whole estate; but as that estate has passed to subsequent purchasers, half to one and half to the other; and, as we have seen, the last purchaser should more properly be charged with the equity of Ford than the first, the chancellor may adjust the incumbrance resting upon the entire estate, as between these purchasers, so as to limit it to the last one, if thereby he does not impair the rights of Ford, but may give full effect to them. This may be attained by applying Ford's lien for the balance of Buck's debt to the half interest sold to Jacob Kausler, and not permitting it to touch George Kausler's half, unless it be necessary to supply a deficit. If a debtor sell part of his property, the whole being under judgment liens, the puschasers from the debtor can compel the creditors to go against the property retained by the debtor and exhaust that before taking in execution that sold. Dickinson v. Clowes, 9 Cow. 405. If the debtor, whether by judgment or mortgage, sell off, at different times, the encumbered property, the property will be liable to the creditor holding the lien, in the inverse order of the alienations. The first purchaser may, through the chancery court, remit the creditor to the property of purchasers subsequent to himself, and force him to obtain satisfaction, beginning with the last, and he cannot be touched except for a balance after the property of the others has been exhausted. Guion v. Knapp, 6 Paige Ch. 35; Aural v. Wade, Lloyd & Gould, 252; Agricultural Bank v. Pallen, 8 S. & M. 359.

We are of opinion, therefore, that the balance of the purchase money from Buck to Ford should be raised from the half of the property sold to Jacob Kausler; and if that half should not on sale produce enough to

pay the debt, then the deficit to be raised out of George Kausler's half.

As to the notes of Jacob Kausler, held respectively by Ford and Buck's estate, we think they stand upon an equal footing, each creditor being entitled to share in the proportion the debts bear to each other in any surplus, after paying Buck's debt to Ford, which the half interest of Jacob Kausler may produce on a sale. Buck's estate being insolvent, Ford has no greater right to any money which that estate may realize on Jacob Kausler's notes than the other creditors. Ford has no lien or preference on these notes. It is the case of a creditor who has passed by indorsement, without recourse, in due course of business, for value, two notes (retaining two himself), all protected by a lien. Each has an interest in the lien proportioned to the amount of his debt, and the product of the lien will be distributed on that basis. Cage, ex'r, v. Iler, 5 S. & M. 410; Parker v. Mercer, 6 How. (Miss.) 420.

We think the bill is not obnoxious to the objection of multifariousness. Nor were the complainants under a duty to tender a deed with their bill, nor to have averred a tender before bill filed, as insisted for the appellants. What is urged for multifariousness, is nothing more than a narrative of facts, somewhat involved, of the relations and interests of the several parties in the subject of the suit.

After setting out the written contract, the averment is, upon information and belief, that Ford had made a deed with reservation of lien, and discovery and production of the deed is asked. The deed in fact had been executed, and was shortly afterward filed in the suit. It is not, then, the case of a vendor, who is under obligation to convey, upon payment of the money, seeking payment out of the land, without showing a performance, or offer to perform his part of the contract. The principle invoked for the appellants is entirely

reasonable and just, but does not apply in this case. It was not error, therefore, to overrule the demurrer.

The decree of the chancellor, not conforming to the views herein expressed, is reversed, and a decree will be rendered here, limiting the complainants in the first instance, to a sale of Joseph Kausler's half of the plantation, the proceeds to be first applied to the payment of the costs of the chancery court; secondly, to the debt from Buck to Ford, as represented by his note; the surplus, if any, to be divided between the complainants and Buck's administrator, in the proportion of the amount of the notes of Jacob Kausler, respectively held by them. If Jacob Kausler's half of the premises shall not on sale realize enough to pay Buck's debt aforesaid, then so much of George Kausler's half of the premises be sold as will provide for the balance.