368 So.2d 819 (1979)
Jacob C. PONGETTI, Trustee in Bankruptcy of the Estate of H. Clint Sims, Bankrupt
v.
BANKERS TRUST SAVINGS AND LOAN ASSOCIATION et al.
No. 50180.
Supreme Court of Mississippi.
February 7, 1979.
Rehearing Denied April 4, 1979.
Parker, Averill, Funderburk and Butts, Paul S. Funderburk, Tupelo, for appellant.
Mitchell, Rogers, Eskridge, Voge and Clayton, Claude F. Clayton, Jr., Tupelo, for appellees.
Before ROBERTSON, SUGG and WALKER, JJ.
*820 SUGG, Justice, for the Court:
This appeal and cross-appeal is from a decree of the Chancery Court of Lee County applying the doctrine of marshaling of assets to a limited extent.
At the outset, it will be helpful in understanding the complicated facts of this case to set forth a summary followed by a detailed statement of the facts.
Miller owned two tracts of land which he mortgaged to Bankers Trust Savings and Loan Association. Miller sold all of the land at different times to different grantees. He mortgaged part of Tract I to Sims who released part of the land covered in his mortgage without consideration, retaining his junior mortgage on part of Tract I. After mortgaging part of Tract I to Sims, Miller sold Tract II which was later acquired by the present owners who erected an office building on Tract II. The present owners executed a deed of trust on Tract II. Mississippi Valley Title Insurance Company issued its title policy in the amount of $58,200 on Tract II overlooking the senior mortgage of Bankers Trust which appeared of record. Mississippi Valley purchased the senior mortgage from Bankers Trust, released Tract II from the mortgage without consideration and proceeded with foreclosure against the remaining part of Tract I on which Sims held a junior mortgage.
On November 18, 1970 Jim Miller owned two parcels of land hereafter referred to as Tract I and Tract II. Miller and his wife executed a deed of trust on November 18, 1970 which secured a loan of $128,000 from Bankers Trust Savings and Loan Association. The deed of trust included both Tract I and Tract II.
On January 15, 1971 Miller conveyed by warranty deed part of Tract I to James Loyal Ransom and wife, Mary Nell Ransom, for $25,000. On May 26, 1971 Bankers Trust released the Ransom land from its deed of trust upon payment to it of $10,000 by Miller. The $10,000 was credited to the note secured by the deed of trust.
On April 28, 1971 Miller executed a deed of trust covering the remaining part of Tract I which secured a debt to H. Clint Sims in the amount of $21,349.98. The deed of trust recites: "This is a first lien on the above described property except deeds of trust to Bankers Trust and Dr. Robert Pegram."[1] The deed of trust was filed for record and recorded on June 8, 1971 and contains the following provision.
Also any other indebtedness heretofore, now or hereafter (within the period of four years from the date hereof) contracted with either said beneficiary or the holder of the above described note or notes by the grantor or grantors herein or either of them whether such other indebtedness be evidenced by note, open account, overdraft or any other manner whatsoever, including also any indebtedness of any grantor made as joint maker, surety, endorser, or grantor.
Without receiving any consideration, Sims released part of Tract I from his deed of trust on November 9, 1971. The land released was later sold by Miller to William R. Romito on December 30, 1971. Romito paid Miller $18,000 for the land and in turn Miller applied $15,000 on the debt due Bankers Trust. Bankers Trust then released the Romito land from its deed of trust on January 10, 1972.
On November 30, 1971 Miller conveyed to Jim Miller Construction Co., Inc. the remaining part of Tract I by warranty deed. The deed was filed for record on February 14, 1972 and recites that the consideration was $10.00 cash and other good and valuable consideration, "including the assumption by the grantee herein of the indebtedness due Bankers Trust Savings and Loan Association, on the below described property ..."
Sims filed suit against Miller on January 19, 1972 in the Circuit Court of Lee County, Cause No. 10,903, on a promissory note from Miller to Sims dated April 28, 1971 in the amount of $21,349.98. This is the same note secured by the 1971 deed of trust executed by Miller for the benefit of Sims. *821 Sims averred that $14,500 plus accrued interest was due on the note. Judgment was rendered on May 18, 1972 in favor of Sims against Miller for $3,300 which sum included an attorney's fee of $300.
Sims filed suit against Miller on January 19, 1972 in the Circuit Court of Lee County, Cause No. 10,904, on a promissory note from Miller to Sims dated March 1, 1971 in the amount of $3,000. Judgment was rendered in Cause No. 10,904, on May 18, 1972 awarding Sims a judgment against Miller in the amount of $15,950, which included attorney's fees in the amount of $1,450.
Judgments in the two suits were rendered on the same date and obviously the amounts were transposed. However, this error does not affect this suit because Sims released the judgments against Miller in consideration of Miller executing a note to him for $17,500 on February 1, 1973 bearing interest at 8% per annum and due February 1, 1975.
By final decree rendered by the Chancery Court of Lee County on October 4, 1973, United States Fidelity & Guaranty Company was awarded a judgment against Jim Miller, Mrs. Arweeda Miller and H. Clint Sims, "jointly and severally," in the amount of $14,726.21. Sims paid $14,855.98 for an assignment of the judgment to United States Fidelity & Guaranty Company. The chancellor found that amount was included in the deed of trust from Miller to Sims under the provisions of the "dragnet" clause quoted supra.
Miller conveyed Tract II to Cavalier Furniture Manufacturers, Inc. by warranty deed dated April 29, 1971. This deed was filed for record August 31, 1971, but does not mention the outstanding deed of trust to Bankers Trust. Several conveyances of Tract II were made to succeeding grantees, and on May 15, 1973, Corinth Machinery Company conveyed Tract II by warranty deed to Robert E. Anderson, et a. doing business under the partnership name of Corinth Machinery Land Company. None of the deeds conveying Tract II mentioned the outstanding deed of trust in favor of Bankers Trust.
Anderson and his partners executed a deed of trust on May 15, 1973 securing two notes in the total amount of $58,200 due C.G. Howell. The parties stipulated that the deed of trust executed for the benefit of C.G. Howell had not been cancelled, the notes secured by the deed of trust had not been paid, and were outstanding on the date of the trial. Anderson and his partners erected an office building on Tract II after acquiring title to it.
Mississippi Valley Title Insurance Company issued a title insurance policy in the amount of $58,200 to Anderson and his partners on Tract II which policy of insurance, among other things, insured against loss which the insured might sustain because of any lien or encumbrance on the title to Tract II existing as of July 16, 1972. The Bankers Trust deed of trust was not listed as an exception in the title insurance policy. After discovering the existence of the Bankers Trust deed of trust, Mississippi Valley paid Bankers Trust $88,912.55 on December 13, 1974 for an assignment of the deed of trust. Mississippi Valley then released Tract II from the Bankers Trust deed of trust without consideration, and began foreclosure against the part of Tract I covered by the Sims deed of trust.
Sims filed a bill of complaint for a temporary and permanent injunction to enjoin Mississippi Valley from selling the part of Tract I covered by the Sims deed of trust, and prayed that Tract I be sold by order of the court and the proceeds, after payment of expenses, be applied first to satisfy his deed of trust on Tract I plus all damages sustained by him. Complainant also prayed for relief against Bankers Trust, none was granted, no appeal was taken from this finding, so the question of the liability of Bankers Trust to Sims has become final.
On final hearing the chancellor held that Bankers Trust had a first deed of trust on both Tracts I and II and could have foreclosed on both tracts when default occurred. The chancellor also held that Mississippi Valley had full knowledge of all the facts when it purchased the deed of trust; that it purchased the deed of trust to protect itself *822 because it had issued its title policy having overlooked the deed of trust which appeared of record. The chancellor held that Tract II, exclusive of improvements, had a value of $40,000 and invoked the doctrine of marshalling of assets to a limited extent by directing that $40,000 should be credited against the deed of trust then held by Mississippi Valley. The chancellor directed a sale of that part of Tract I covered by the Sims deed of trust. The land was sold by the Commissioner for $54,501.22. The chancellor allowed a commission of $1,000, directed court costs and publication costs be paid, and the remaining balance be applied as follows: $48,912.55 (the amount of the Bankers Trust deed of trust less $40,000 credit) plus interest at 6% from December 13, 1974 to June 7, 1976, making a total of $53,278.42 to Mississippi Valley Title Insurance Company with the balance, if any, to be paid to H. Clint Sims, the complainant. The practical effect of this decree denied Sims any relief because there was no balance remaining to be paid to him.
The resolution of this case rests upon the principle of distributive justice; that of doing equal equity to Sims[2] and Mississippi Valley. It involves the application of the equitable doctrine of the inverse order of alienation which is a part of the doctrine of marshaling of assets.
In Pallen v. The Agricultural Bank, 1 Freeman Chancery Reports, 419, The Agricultural Bank obtained a judgment against Thomas J. Randolph who owned several lots which were subject to the judgment. Before the judgment was satisfied Randolph sold one of the lots to Moses M. Pallen, and subsequently sold the other lots to other persons. Execution then issued on the judgment and was levied on the lots sold to Pallen. Pallen filed his bill, obtained an injunction and the Bank demurred to the bill. The chancellor overruled the demurrer and on appeal the case was affirmed. The Agricultural Bank of Mississippi v. Pallen, 16 Miss. 357, 8 S&M (1847). The High Court of Errors and Appeals stated:
... The view taken by the chancellor is regarded as correct.
The decision rests upon the principle, that where a judgment debtor has various pieces of property, affected by the judgment lien, if he alienate one piece, that is not to be charged, until the others, not alienated, have been subjected, provided they still remain within reach of the execution. If all be alienated, then each is liable to the satisfaction of the judgment, in the inverse order of alienation; the last alienated being first liable. But if all be necessary to satisfy the judgment, then all must be so applied. It is a question only as to the order of application.
(16 Miss. at 359).
The rule of inverse alienation announced in The Agricultural Bank v. Pallen, supra, has been reaffirmed in the following cases: Rollins, et al v. Thompson, 21 Miss. 522, 13 S&M (1850); Keaton, et al v. Miller, 38 Miss. 630 (1860) (extended to permit the administrator of a donee of personal property to invoke the doctrine of inverse alienation); Kausler, et al v. Ford, et al, 47 Miss. 289 (1872); Millsaps v. Bond, 64 Miss. 453, 1 So. 506 (1886) (extended to permit the holder of a junior mortgage to invoke the doctrine of inverse alienation).
In Kausler, supra, the Court stated:
... The principle has received various applications, but it rests on the same essential reason. As where a creditor has a lien upon or an interest in two funds, and another has a lien upon but one of them, the latter has the right to drive the former to get his satisfaction out of that fund, to which he has an exclusive claim, where it will not prejudice him.
.....
... If the debtor, whether by judgment or mortgage, sell off, at different times, the encumbered property, the property will be liable to the creditor holding the lien, in the inverse order of the alienations. The first purchaser may, through the chancery court, remit the *823 creditor to the property of purchasers subsequent to himself, and force him to obtain satisfaction, beginning with the last, and he cannot be touched except for a balance after the property of others has been exhausted. Guion v. Knapp, 6 Paige Ch. 35; Aural v. Wade, Lloyd & Gould, 252; Agricultural Bank v. Pallen, 8 S.&M. 359. (47 Miss. at 301, 302).
The above cases demonstrate that we adhere to the doctrine of inverse alienation where the property subject to the senior mortgage has been sold or mortgaged in separate parcels. In this case, Mississippi Valley, the holder of the senior mortgage, released Tract II from the senior mortgage without consideration. Tract II was sold by Miller after he executed a deed of trust to Sims on Tract I. The general rule governing the equitable rights of Sims and Mississippi Valley is stated in 110 A.L.R. 67 (1937) as follows:
It is the general rule, subject to certain qualifications set out in succeeding subdivisions, that where a mortgagor or other lienee has alienated a portion of the mortgaged premises, and the mortgagee or other lienor, having notice of such alienation, releases the mortgage or other lien as to the portion retained by the mortgagor or lienee, such mortgagee or lienor must deduct from the debt, before enforcing his lien against the property alienated, the value of the property released.
One of the cases cited in support of the rule is Dillon v. Bennett, 22 Miss. 171, 14 S&M (1850), 110 A.L.R. 67, 69 (1937). In that case, Dillon held a mortgage on certain land and slaves. After the slaves had been sold to Bennett, Dillon agreed to release the land from the mortgage. The Court held:
The question is, whether this agreement has the effect to release the slaves, purchased by Bennett, from the operation of the trust. On very plain principles we think it does.
In the Agricultural Bank v. Pallen, 8 S.&M. 357, it was decided, that where a judgment creditor had a lien upon several pieces of property, some of which had been alienated by the debtor, the property not sold must be first applied to the payment of the debt. If all have been sold, the last sold must be first applied. The same principle is recognized in Rollins v. Thompson, 13 S.&M. 524.
Perhaps it is unnecessary to declare, whether this rule is applicable in its fullest extent to this case. Its object is the preservation of entire good faith between all parties interested. In this instance a great deal more property was embraced in the deed of trust, than was requisite to pay the debt. After the purchase by the defendant, there was enough left of the trust property to pay the debt. He had a right to require, that the creditor in the deed of trust should not release any of the residue of the encumbered estate, so as to throw any farther burden or risk on that which had been sold. Dillon subsequently released the land, and thereby gave up $12,500. As to Bennett, who had previously purchased and paid for these slaves, justice requires that they should be exempt from liability to the amount so released. Had the creditor, Dillon, been merely passive, we will not decide whether Bennett would be entitled to the same relief. But his active interference gives a right to the relief.
.....
All the property in the deed of trust was originally liable to its satisfaction. A purchaser with notice, could not claim its absolute exemption. Bennett occupies that position. All he could have required, was to marshal the order of application. But when the creditor discharged a part of the property after this purchase, he interfered with this right of the purchaser. He took the hazard upon himself, and must be held to have discharged what had been previously alienated, and impliedly to have agreed to look only to what remained.
(22 Miss. 175, 176).
Applying the principle announced in Dillon, Sims, who had a junior mortgage only on Tract I, had a right to require Mississippi Valley, as holder of the senior *824 mortgage covering both Tract I and Tract II, not to release its security on Tract II without crediting the value of Tract II on its senior mortgage. Without receiving any payment on its mortgage, Mississippi Valley released Tract II, which had a value of $115,000, and thereby imposed a greater burden on the junior mortgage of Sims on Tract I. Mississippi Valley prevented Sims from exercising his right to have Tract II first subjected to the lien of its senior mortgage under the doctrine of the inverse order of alienation. Consequently, as to Sims, Mississippi Valley's senior mortgage stands discharged because the value of the land it released, without consideration, was sufficient to satisfy its mortgage, leaving Sims free to subject Tract I to payment of his junior mortgage.
Having determined that Sims is entitled to relief, we must determine the amount secured by his junior mortgage. The chancellor found that Sims' deed of trust secured $17,500 with interest from February 1, 1973 plus the judgment Sims acquired from United States Fidelity & Guaranty Company in the amount of $14,855.98 with interest at the legal rate from October 4, 1973.
With respect to the $17,500 the chancellor obviously overlooked the testimony of Sims that $375 had been paid on this note. Accordingly, the principal of the note will be reduced by $375.
We also hold that the principal amount due under Sims' note should be reduced by $3,000 because Sims released part of Tract I which was later sold to Romito without receiving any consideration and without requiring that any part of the sale price be applied to the note secured by his deed of trust. Romito paid $18,000 for the land he bought from Miller and $15,000 was applied to the senior mortgage of Bankers Trust. Under the familiar maxim of equity, "He who seeks equity must do equity," Sims is charged with the $3,000 difference between the purchase price of the Romito tract and the amount applied on the senior mortgage.
The court erred in holding that the "dragnet" clause of the Sims deed of trust covered the judgment which Sims procured from United States Fidelity & Guaranty Company. In Hudson v. Bank of Leakesville, 249 So.2d 371 (Miss. 1971) we held that the "dragnet" clause of a deed of trust or mortgage does not extend to debts purchased or otherwise acquired by a mortgagee from third parties against a mortgagor.
Tract I sold at a commissioner's sale to Mississippi Valley for $54,501.22. We affirm the decree confirming the sale on the condition that Mississippi Valley pay Sims' trustee in bankruptcy $14,125 plus interest at 8% from February 1, 1973 within 30 days; otherwise, the commissioner's sale is set aside, Sims' deed of trust may be foreclosed against Tract I, with the proceeds being distributed as follows: (1) expense of foreclosure; (2) payment of Sims' deed of trust in the amount of $14,125 plus 8% interest from February 1, 1973; (3) payment to Mississippi Valley of the balance due on the deed of trust held by it; and (4) the balance, if any, to Jim Miller Construction Co., Inc.
All court costs are taxed against appellee.
REVERSED ON DIRECT APPEAL, AFFIRMED IN PART ON CROSS APPEAL AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] The Pegram deed of trust is not involved in this litigation.
[2] This appeal is prosecuted by the trustee in bankruptcy of the Estate of Sims.