GEORGE FEARN et al., Appellants, *v.* JAMES SHIRLEY and WIFE et al., Appellees.

1. STATUTE OF LIMITATIONS: FEMES COVERT: INFANTS.—The right of *femes covert* and infants, who are the equitable owners of slaves, are not barred by reason of the failure of the trustee, in whom the legal title is vested, to institute suit for their recovery, until after the lapse of the period prescribed by the Statute of Limitations. Their rights in this respect are the same, whether they be the legal or equitable owners of the property; and whether there be a trustee or not. *Bacon et al.* v. *Gray,* 23 Miss. R. 140.

2. CHANCERY: PRACTICE: PLEADING.—A general demurrer setting up the Statute of Limitations to a bill in equity, where it appears that the time prescribed by the Statute of Limitations had elapsed before the institution of the suit, ought not to be sustained; because it does not clearly appear from the bill, that one of the several joint complainants was under no disability to sue, at the time the cause of action accrued—the disability of all the others being distinctly averred. The defendants in such a case ought to have given notice, by his demurrer, of the insufficiency of the allegation of the bill, so as to have allowed complainants to amend.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, Chancellor.

*Yerger* and *Rucks,* and *George L. Potter,* for appellants.

1. The statutory bar to the trustees is a bar to the infants and Mrs. Shirley. Hill on Trustees, 503, 504; *Hovenden* v. *Annesley,* 2 Scho. & Lef. 628; *White* v. *Prentiss,* 3 Monroe, R. 503.

2. The bill should have shown that James J. Shirley, at the time of Fearn's purchase, was under no disability to sue. If com-

plainants rely upon the exceptions in the Statute of Limitations, as saving them from its operation, they must show themselves by the allegation of their bill to be within the exceptions. 4 Wash. C. C. R. 631; 1 Ves. & Beames, 539; Story, Eq. Pl. § 509.

*Geo. S. Yerger,* for appellee.

HANDY, J., delivered the opinion of the court.

The material facts stated in the complainant's bill are, that in January, 1841, the complainant Adeline Shirley, the wife of James Shirley, purchased from Leigh, Maddox & Co., and Samuel B. Marsh, the slaves in controversy, for her sole and separate use, and in behalf of herself and her children, which she then had or thereafter might have; and that Marsh and Leigh, Maddox & Co., conveyed the slaves to Shattuck and Caruthers, as trustees for Mrs. Shirley, and her children and others, upon the following trusts; that the trustees should permit Mrs. Shirley, and her children, and James Shirley as their agent, to have the possession of the slaves, and other property mentioned in the deed, and to receive the hire and profits of the same to their own use, except so much thereof as should pay to Leigh, Maddox & Co., and to Marsh, the debts due them, and for which they purchased the property, as stated in the deed, which payments the trustees covenanted should be paid as specified in the deed; it was further stipulated by the trustees, that the slaves and other property, mentioned in the deed, should be kept together until the youngest of the future children of James and Adeline Shirley, if any, should arrive at the age of twenty-one years, and should there be no such future issue, then until the youngest child named in the deed, should arrive at the age of twenty-one years; and then that the trustees should make an equal division of the slaves and their increase between Mrs. Shirley and her children.

In pursuance of the terms of this deed, the slaves remained in the possession of Mrs. Shirley, and were controlled by her husband James Shirley, as her agent, but without any claim on his part, and this was continued until the year 1845, when they were levied upon under a judgment in favor of Martin, Pleasants & Co., against

James Shirley, rendered in the Circuit Court of the United States, for this State, at Jackson, in May, 1837, and sold under execution thereon, and purchased by George Fearn, who then took them in possession, and now by himself or through his agent, holds them under that purchase.

The bill also states, that the lien of the judgment of Martin, Pleasants & Co., had expired when the sale was made, or at all events, that it was inferior to that under which Leigh, Maddox & Co., and Marsh purchased, and from which complainant's title is derived; and that the lien of the judgment having ceased to exist, when the property was levied upon under it, the judgment itself was extinguished by the discharge of James Shirley, as a certificated bankrupt under the Act of Congress.

The prayer is for a delivery of the slaves to the complainants, and for an account and decree for payment of the hire, &c.

The defendants demurred to the bill, setting up the Statute of Limitations as a bar to the relief sought. The demurrer was overruled, and from that order this appeal is taken.

The only question necessary to be considered is, whether the possession of Fearn under his purchase, is a bar to the recovery of the complainants?

It appears by the bill, that the levy upon the slaves was made in 1845, and that they were sold under the execution prior to February, 1846, and that Fearn has had them in his possession or under his control ever since, claiming them under his purchase. Whether the judgment under which he purchased was a *lien* or not, or whether it was in law extinguished or not, by the discharge of Shirley as a bankrupt is immaterial, with reference to the defence which Fearn sets up as a bar to the complainant's recovery. The bill was filed in January, 1853, and it is clear that the adverse possession of Fearn, for more than three years, is a bar to the relief sought, unless the coverture of Mrs. Shirley, and the infancy of her children, prevent the application of the bar to the case.

If the legal title had been in Mrs. Shirley, and her children, and there had not been a party competent to assert, and prosecute a claim to the property, there can be no doubt, but that the dis-

ability of herself, and of her children, would have prevented the running of the statute.   But it is insisted that the bill shows that the legal title was in the trustees, who are to be regarded as the owners, and were competent to sue, and having failed to do so, their remedy is lost against the purchaser, and also the right of recovery by the *cestui que trust.*

This rule is supported by many authorities; but a contrary doctrine has been held by this court, in the case of *Bacon et al.* v. *Gray,* 23 Miss. 140.   Judge Sharkey, in delivering the opinion of the court in that case, says, that " the saving in favor of infants, in this statute, is general.   It covers all rights of infants, and operates against all persons.   At least, there is no exception in the statute itself; and to hold that time does create a bar against infants in certain cases, is to interpolate on the statute."   In answer to the objection, that the infant's property is held by the trustee, whose duty it was to sue for it, and who was entirely capable of suing, he says: " An infant's property is always held by a trustee. If there should be no will or settlement, it goes first into the hands of the administrator, who may dispose of it illegally or suffer it to be lost.   In the next place, it goes into the hands of the guardian, who may also be negligent, or violate his trust.   The infant cannot hold possession, or even sue for his property, without the aid of the guardian, nor can he make any valid contract in reference to it.   If property be settled for his benefit by will or deed, a trustee must intervene.   The law, in some way or other, forces the property into the hands of trustees; and one of the great objects of the saving was to protect infants against the mismanagement and negligence of those trustees.   It must have been designed to prevent an injury from the act of any one, by affording a full opportunity to him to protect himself when his judgment should become sufficiently ripened to enable him to understand his rights." And the conclusion in that case was, that the infant's right of action did not accrue until he had arrived at full legal age, and that it was not barred until the lapse of three years thereafter.

We consider that decision as founded upon a just view of the object and policy of the saving of the rights of minors, contained in the statute; and the principle there stated is as applicable to

the rights of a *feme covert* as to those of infants.    It is an adjudication upon the question, which no longer leaves it an open one in this court.

But it is objected, that the bill does not show that James J. Shirley, one of the *cestuis que trust*, and whose executrix is one of the complainants, was an infant, and that his disability would prevent the running of the Statute of Limitations as to him; and that if his right is barred by the statute, all the complainants are barred, because their claim is joint; and, therefore, that the demurrer should have been sustained, and the bill dismissed.

The bill does not positively show that he was an infant at the time Fearn purchased the property, and if he had been the only complainant, it would have been necessary that the bill should show his disability, in order to show his right to recover.    But where there are several complainants who are shown to be infants, and another whose disability is not distinctly shown, and the demurrer is general, without giving notice of the objection to the bill, on account of its insufficiency in its allegations, as to the disability of one of the complainants, it would not be proper to sustain the demurrer, and deprive the complainants of the right to amend, so as to show the disability of that complainant.    Such a practice might operate much to the prejudice of the complainants, while if the defendant had given notice of the nature of the objection, it might have been remedied by amendment.    On the other hand, no injury could arise to the defendant by overruling his demurrer on this ground, because, if one of the complainants was not under disability, and the claim was barred as to him, this may be relied on by answer; and where the fact is established, the claim being joint, the bar must prevail as to all the complainants.

The decree overruling the demurrer is, therefore, affirmed, and the cause remanded; and the defendants required to answer within sixty days.