Dease *v.* Moody.

*Gibbs* and *Bowman*, for appellees.

---

## OLIVER C. DEASE *v.* EDWIN MOODY.

1. CHANCERY: PLEADING AND PRACTICE.—If a bill in equity contain a prayer for specific relief, and also a prayer for general relief in the disjunctive, any relief may be granted which the facts stated in the bill, and proven, will justify, although it be inconsistent with the relief especially prayed for. See 4 Paige, 396; 1 Bland. 252.

2. SAME: ANSWER: WHEN EVIDENCE.—If a bill in equity charge that a certain transfer in litigation was made unconditionally, and not call for any discovery as to the terms and conditions upon which it was made; and if the answer deny the charge, and allege in support of the defendant's title conditions upon which

the transfer was made, the statement in the answer, in relation to the conditions of the transfer, is not responsive to the allegation in the bill, and therefore not evidence.

3. CHANCERY: PLEADING: BILL: SCOPE OF.—The complainant charged in his bill that S. purchased from the State, on a credit, certain lots, and gave his notes therefor, with the defendant as his surety; that the certificate of purchase was taken in defendant's name, to indemnify him against loss on that account; that defendant afterwards transferred the certificate to S. unconditionally, and that complainant had become, by assignment of S.'s interest, the owner of the lots, and had paid two-thirds of the purchase-money; that defendant, although released from the debt by his certificate in bankruptcy, had paid the remaining purchase-money to the State, and fraudulently procured the issuance to himself of a patent for the lots; but in the event that it should be holden that the procurement of the patent was not fraudulent, the complainant tendered the purchase-money advanced by defendant. The prayer was, that the defendant be decreed to convey the title to complainant, or for general relief. *Held:* That a decree, that the defendant convey, upon the complainant's paying to him the portion of the purchase-money which he had advanced, was not beyond the scope and object of the bill, and was properly made, being sustained by the proof.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

*D. Shelton*, for appellant,

Cited, 1 Daniel, Prac. 439, 440; 2 Sch. & Lef. 1, 11; 7 Vesey, 222; 3 Russ. 171; Story, Eq. Pl. §§ 42, 394, note; 2 Ball & Beatty, 228; 12 Ves. 78; 2 Ves. Sr. 225; 2 Atk. 141; 3 Ib. 132; 4 Johns. Ch. R. 128; 10 Johns. R. 530; 6 Mad. R. 199; 2 Binney, 382; 3 Mylne & Keene, 183; 2 Daniel, Prac. 983; 1 Greenl. Ev. § 260; 2 Story, Eq. Jur. § 1528; Gresley, Eq. Ev. 4; 9 Vesey, 584.

*Freeman* and *Dixon*, for appellee.

HANDY, J., delivered the opinion of the court.

This was a bill filed by the appellee in the Superior Court of Chancery, the material allegations of which are in substance as follows:—

That in the year 1833, one Thomas S. Shaw became the purchaser of the town lot in controversy, at a regular sale of town

lots for the State, and made by the State Commissioner, for which the appellant, Dease, as first maker, and Shaw, as second maker, gave their three notes, and Dease took the certificate of purchase in his own name, as a security for signing Shaw's notes; the purchase being made for the sole benefit of Shaw, who took possession, and Dease shortly thereafter assigned the certificate to Shaw, unconditionally, whereby Shaw became the absolute owner of the lot as against Dease, subject only to the lien of the State; that Dease became a bankrupt, and was discharged as such in November, 1843; that in April, 1839, a judgment was rendered in favor of the State against Dease, on two of the notes last due, given for the purchase-money; and upon an execution issued thereon, Moody purchased the lot for a sum of money more than sufficient to satisfy the judgment, and paid the purchase-money, and received a sheriff's deed; that Dease was aware of the sheriff's sale, and acquiesced in it; that Shaw had died before that time, but had in his lifetime sold the lot to one Barnes, and assigned to him the certificate of purchase, and delivered to him possession of the premises; and that he remained in possession until the lot was sold under an execution against him, at which sale Moody became the purchaser; after which, Barnes transferred to Moody the certificate of purchase, and subsequently, for a valuable consideration, conveyed the premises by deed of quit claim to Moody; that Moody believed, when said sales were made, that the first note given to the State for the purchase-money of the lot, had been paid, as no suit had been brought upon it, as upon the two others; but that Dease now claims to have paid that note in the year 1844, because Shaw failed to comply with his agreement to pay the same, and therefore that he paid it and received a patent for the lot from the State.

The bill denies that Dease sold the lot to Shaw upon any condition whatever, or that Dease reserved any right to pay the purchase-money, and take a patent from the State; and charges that the payment of the note by Dease, if in fact made, was made secretly and fraudulently, without the knowledge of Moody, and that the patent was issued to him without legal authority, because Moody was then the holder of the certificate; that the lot at that time was worth, and would have sold for much more than the sum

due on the first note, so that the lien of the State was ample security to the State and to Dease against loss, and that Moody was fully able to pay the same, and would have done so, if he had not believed it to be paid; that by law the assignee of the certificate is entitled to the patent upon satisfactory proof made to the Secretary of State, of the payment of the purchase-money, and that Moody, as the assignee, is entitled to the patent, the issuing of it to Dease being fraudulent and void.

But in the event that the procurement of the patent should be held not to be fraudulent, the bill tenders to Dease the money paid by him on the note, with interest, stating that the same had already been tendered to Dease and refused.

The prayer is, that Dease be decreed to convey the lot to the complainant, but if that relief should not be considered proper, for general relief.

The answer admits the purchase, and the execution of the notes by Dease and Shaw, and that a certificate was issued to Dease. But denies that the purchase was made by Shaw, and that Dease was surety, and alleges that Dease was the principal and Shaw the surety, and that the purchase was not made for Shaw's benefit; denies that the certificate was issued to him as a security for his liability on the notes, or that Shaw by the transfer of the certificate to him became the owner of said lot, as between them, and alleges that the transfer of the certificate to Shaw was a conditional agreement for the sale of the lot, authorizing a patent therefor to be issued to Shaw, upon condition that he promptly paid the notes at their maturity, and if he failed to do so, the agreement was to be at an end, and Dease might pay the money and take the title; Shaw merely promising verbally to pay the notes, which he failed to comply with. He alleges that he gave notice to Barnes, while he was in possession, that unless the notes should be paid, he would pay them and take the patent; that Barnes promised to do so, but failed, and the property being afterwards advertised to be sold by the State for the payment of the first note, Dease paid the note and received the patent. He denies that the patent was fraudulently obtained, or that it could operate to the prejudice of Moody, inasmuch as he had not at that time any right or title to

the property, the interest of Barnes having been acquired by him long afterwards, and in the year 1852.

Proof was taken upon the points, whether the original purchase from the State was made by, and for the benefit of, Shaw or Dease, and whether the transfer of the certificate by Dease to Shaw was absolute or unconditional in its terms, the written indorsement being obliterated and illegible.

On the hearing, the chancellor decreed, appointing a commissioner to take testimony, and report whether the note was paid to the State by Dease, and the particulars of the payment; and if found to have been paid by him in money, or other funds, that Moody should pay to him the amount or value so paid, and thereupon that Dease should convey the premises to Moody: and from that decree, this appeal was taken.

It is now insisted in behalf of the appellant, that under the frame of the bill, the complainant was not entitled to the relief granted, although the proof might have entitled him to the relief upon a bill properly framed for redemption, that the bill set up an absolute equitable title in Moody, deduced from the absolute transfer of the certificate by Dease, and prays for an unconditional conveyance of the legal title, and that under such a bill, a conveyance could not be decreed on the condition that Moody should refund the money paid by Dease. Let us, then, take a brief view of the character and scope of the bill, and of so much of the proof as touches the nature of the complainant's claim.

The bill claims that the original purchase was made by Shaw and for his sole use, Dease being surety in the matter; and that the certificate of purchase was issued in the name of Dease to indemnify him as surety; that Dease transferred the certificate to Shaw, who sold the premises to Barnes, and transferred to him the certificate; that the complainant purchased Barnes's interest, and also the interest of Dease, under executions against him upon two of the notes given to the State for the purchase-money, Dease acquiescing in the sale under the executions, whereby those two notes were paid; that Dease afterwards, and not having the certificate, obtained a patent to the lot, upon paying the first note to the State, which was done without notice to Moody, and when

there was no danger of Dease sustaining any loss by reason of his liability on the note, both because he had been discharged in bankruptcy, and because the lot was worth much more than the amount due on the note. The bill, therefore, treats the act of Dease in obtaining the patent, as unauthorized, fraudulent and void; but in the alternative, if the facts stated should not justify that conclusion, it tenders repayment of the money paid by Dease as a condition to obtaining a conveyance of the title to Moody, and prays for a conveyance generally, and in the alternative, for other and proper relief. And the question now is whether these facts, if proved, would entitle the complainant to a conveyance, upon condition of his paying to Dease the money paid by him with interest.

It is contended against the decree, that the bill makes a case of an unconditional equitable title in Moody, by alleging an absolute transfer by Dease of the certificate to Shaw, and that this claim is wholly foreign to the right to redeem, granted by the decree. And the main point of controversy in the court below appears to have been, whether the transfer by Dease was conditional or absolute. But we do not consider it material whether the transfer was absolute or conditional, if it is shown that Shaw was the purchaser, and Dease really his surety. For if Dease, being a surety, transferred the certificate to Shaw upon the express condition that Shaw should promptly pay the notes at maturity, and otherwise, that Dease should be restored to all the rights which he had before the transfer, Dease could have had no further right, in case of default of payment by Shaw, than to pay the purchase-money, and to hold a lien upon the property for the money paid by him. And if upon payment of the purchase-money he had obtained a patent in his own name, he would have held the legal title in trust for Shaw, and which Shaw might have compelled him to convey, by refunding the purchase-money paid by him. And the result would not be materially different in this case, if there had been an unconditional transfer. For if Dease had been compelled to pay the notes, he would have been entitled as surety, notwithstanding the unconditional transfer, to be subrogated to the rights of the State as vendor, and if necessary, to enforce the lien against the property.

The bill presents the distinct equitable feature, that Shaw was the principal, and Dease the surety in the purchase; that Dease has paid part of the purchase-money, and procured legal title to be made to himself, and that Moody, who has acquired Shaw's rights in the matter, has paid the greater part of the purchase-money, and now, in right of Shaw, seeks to have the legal title conveyed to him, by refunding the money paid by Dease. It is not denied that this relief might have been granted on a bill properly framed for that purpose; and we are of opinion that the facts stated in the bill are a sufficient foundation for the relief granted. It is true, that the bill charges fraud and want of legal authority in procuring the patent; but the equitable right of the complainant upon the ground just above mentioned, is also plainly set forth, and a tender of the money paid by Dease is made with express reference to that aspect of the case. It is also true, that the relief granted is not in accordance with the specific relief prayed, but the bill also contains a prayer for general relief in the disjunctive; and the rule in such case is, that any relief may be granted which the facts stated in the bill, if proved, will justify, though it be inconsistent with the relief specially prayed. *Colton* v. *Ross,* 4 Paige, 396; *Lingan* v. *Henderson,* 1 Bland. 252.

The most material controverted fact in the case is, whether Shaw was the principal, and Dease the surety in the transaction. But it is clearly proved by the witness, John W. Shaw, that the purchase was made by his brother for his sole use, and as a place of family residence, and that he accordingly took possession of it shortly after the purchase, and that Dease was never in possession of it, and never claimed title to it. It further appears that Dease transferred the certificate of purchase taken in his name, shortly after the purchase, and he does not pretend that it was not done gratuitously. The fact that Dease was surety, is sufficiently established, and the circumstances tend strongly to show that he occupied the position of the nominal purchaser to answer some private ends of Shaw, which when satisfied, the certificate was transferred.

There is but one other point necessary to be noticed. Dease in his answer, denies the allegation of the bill, that the transfer of the certificate was unconditional, and alleges that it was upon con-

dition that Shaw should pay the notes, and if he failed, Dease should take the title. It is evident that it is upon the terms of this alleged agreement that Dease's right to take the absolute title depends; and the statement of these terms is not matter responsive to the bill, but the allegation of a new and affirmative fact in support of his title. He was not called upon to state the terms of the agreement in relation to the transfer; and if his title was dependent upon the facts stated by him, it was incumbent on him to prove them. This he has not attempted to do; and of course the statements cannot be entitled to any weight in considering the case.

But his conduct is not readily reconcilable with these allegations; for it appears that after the failure of Shaw to pay the notes at maturity, and even after suit had been brought and judgment rendered against Dease, he not only did not act upon the alleged agreement and take the title to himself, but he actually encouraged the sale of the property under the executions against him for the purchase-money, under which Moody purchased.

Upon consideration of the whole case, we think that the decree is correct, and it is affirmed, and the cause remanded for further proceedings upon the decree.