## LIDIA P. PARMELE VS. ROBERT J. McGINTY.

1. CHANCERY PRACTICE: *Statute of limitations.* *Trustee and* cestui que trust.

The saving clause in the statute of limitations, for those under disabilities, includes their equitable rights to sue, as well as their legal rights. The doctrine rests upon reason and conforms to the intendment of the statute. It is a liberal and salutary doctrine that the equitable rights of those who are under disabilities shall not be swept away by the carelessness, ignorance, or negligence of a trustee. Though the legal estate upon which the equitable title is grafted may have been lost, the infant *cestui que trust* shall not be prejudiced thereby, provided he asserts his title with due diligence after his disability ceases.

2. SAME: *Confirmation of a void sale made by a guardian.*

Where a guardian makes a sale of property under a void decree of the court, if the ward, after arriving at maturity, receives the purchase money it will amount to a confirmation of the sale by the ward, and work an estoppel.

3. SAME: *Case in judgment.*

M., guardian of Mrs. P. in her infancy, sold the real estate of his ward under a void decree, and under an order of the probate court invested the proceeds of the sale in a lot in the city of Vicksburg for his ward. The ward married about the age of seventeen, and after she arrived at maturity she and her husband sold the lot in Vicksburg for a larger sum than the guardian realized under the void sale of her realty. *Held*, that she cannot retain that and recover the property in controversy; she has assented to the void sale by receiving the proceeds of it.

APPEAL from the Chancery Court of *Warren* County.

Hon. E. HILL, Chancellor.

All the material facts in this case are fully stated in the opinion of the court.

The error assigned is as follows: "The court erred in dismissing the bill. A decree should have been entered in favor of complainant, according to the prayer of the bill."

*Adam & Speed* and *W. L. Nugent*, for appellant:

The original sale by the guardian of the land in controversy is conceded to have been void.

Lidia Parmele was born September 7, 1834; she married February 9, 1851; she arrived at age September 7, 1855; her mother died in 1844; McGinty sold the land, January 13, 1840, to Wm. Vick, under whom defendant claims, and it is insisted that she did not bring her suit within ten years after

the removal of her disabilities, and that having received the purchase money she is estopped to deny the validity of the sale.

The deed exhibited fails to connect the two lots. The guardian's accounts were never proved, and as the deeds filed as evidence do not sustain the defense, either of ratification or estoppel, it is useless to discuss this point. The duty of establishing this defense devolves upon the defendants. Marshal v. Hamilton, 41 Miss., 229. The deed made by Mrs. Parmele and her husband was executed the day after she was twenty-one years of age, and while she was *under coverture*, and could not have the effect contended for. Cook v. Towmbs, 36 Miss., 685. This could not act as an estoppel. Bigelow on Estop., 485, 493; Tyler on Inf. and Cov., 96, 97, 98, 702, '726, 727, 731, 733, 734; Bermis v. Call, 10 Allen, 512.

Is the statute of limitations of five years applicable to this case? It applies only to cause where the lands of a deceased person or minor may have been sold by an *executor*, *administrator*, *or guardian*, under decree, *bona fide and fairly*, and the purchase money has been paid, and as to minors and married women it does not begin to run until the removal of the disability. Hutch. Code, 830, § 5. It could not relate to cases where there was no law authorizing a sale. The plea is insufficient; it alleges simply " the actual enjoyment and possession of said property" from the date of the deed. The bill does not charge an *adverse possession* in any one. It is only filed to avoid, under which the defendant claims title, and to enforce the trust. The actual enjoyment and possession of the property was not necessarily inconsistent with the title of the complainants, and not necessarily *adverse, visible, and notorious occupation*. Ford v. Wilson, 33 Miss., 490; Magee v. Magee, 37 ib., 138. It must be continuous and uninterrupted. Ferguson v. Carpenter, 36 Miss., 404; Mixim v. Partee, 38 ib., 401. The probate court could not have any jurisdiction; the beneficiaries are not orphans. See Const. Miss., art., 4, §18; Stewart v. Morrison, 38 Miss., 419 : Earle v. Crum, 42 ib.,

165 ; *Ex parte* Atkinson, 40 ib., 17 ; 1 Story's Eq. Jur., §§ 59 60. The statute of limitations of five years cannot apply. The statute of ten years is the only one that has any reason or support. The mere fact that the trustee is barred does not bar the *cestui que trust*. Bacon *v.* Gray, 23 Miss., 146 ; Fearm *v.* Shirley, 31 ib., 301 ; Pearson *v.* McMillen, 37 ib., 588 ; Adams *v.* Torry, 26 ib., 499. In cases of express trusts the statute does not run. Murdock *v.* Hughes, 7 S. & M., 219 ; Jordan *v.* McKenzie, 30 Miss., 32 ; Gay *v.* Edwards, 30 ib., 218 ; Hayne *v.* Bullard, 23 ib., 88 ; Loggins *v.* Heard, 31 ib., 426. No lapse of time is a bar to a suit as between trustee and *cestui que trust*. Dechouche *v.* Savetier, 3 Johns. Ch., 190 ; Roane *v.* Chiles, 10 Pet., 177 ; Provost *v.* Gratz, 6 Wheat., 481 ; Oliver *v.* Pratt, 3 How., 333 ; Manny *v.* Mason, 8 Port., 211 ; Bertine *v.* Varian, 1 Edw. Ch., 343 ; Bank *v.* Beverly, 1 How. (U. S.), 136 ; Raymond *v.* Severson, 4 Blackf., 77. If the statute can be invoked at all, when did it commence running? See Dease *v.* Jones, 23 Miss., 133. Lidia Parmele's right to sue did not accrue until she was placed under a disability protected by the law. See Johnson *v.* Piles, 11 S. & M., 189 ; Barnwell *v.* Barnwell, 2 Hill Ch., 228 ; Thurman *v.* Shelton, 10 Yer., 383.

*T. A. & M. Marshall*, for appellees :

The defense relies upon the statute of limitations, and the question is, when did it begin to run? When the right of action accrued. It is true the right accrued when, in matters of real estate, the party had a perfect right of entry, but that rule does not apply in this case. She was entitled to one-third of the realty when she arrived at the age of twenty-one years, or married. The condition was to be satisfied first.

The pleadings attempt to interpret the deed and put their own construction upon it, and say that the equitable estate vested when the incumbrance, which was before the sale to William Vick by order of the probate court, was discharged. They must be construed most strongly against the pleader, and they must abide by the case they make. The law does not sustain

the position that title in equity to the said land did not vest at once, upon the execution of the trust deed by Ball. The incumbrance was to be removed, but it was not upon that condition the right vested. It passed the whole legal title to the trustee, *without any condition*, for the purpose of securing the benefits thereof to the *cestui que trust*, and, to accomplish that, the trustee should remove the incumbrance. The deed vested in the trustee a fee simple absolute. Upon this point authorities are unnecessary. We are only called upon to meet the case made by the appellants.

If we are incorrect in our interpretation, then all the appellants can claim is what their pleadings allege, that their equitable estate became vested when the incumbrances were discharged, which was *before* the sale under decree of the probate court, and their right of action then accrued; and since the purchase at that sale, even if the deed to him was void, claiming under color of title adverse to complainants, and from that time was in actual possession of said property, claiming and treating it as his own, under the decisions of this state his possession was sufficient to ripen into a title by limitation. We fail to see that the case cited in 8 Johns. (N. Y.), 262, can have any application to this case. The cases cited in 9 Humph., 174, and 6 Ala., 589, are no more in point than the first cited case. It is clear that, whether our interpretation of the trust deed or that put upon it by their pleadings be correct, the conclusion is the same. The right of action accrued during the infancy of complainant, Lidia P. McGinty, and the limitation commenced running at the time of the sale and possession by Vick. If so, the right is barred. The doctrine of successive or cumulative disabilities is untenable, and is so admitted, and does not even allude to the effect of the statute upon an implied trust. The reason of the law upon the latter subject is the presumption of law that the possession of the trustee is the possession of the *cestui que trust*—is not applicable to an implied trust, even if one could be here implied. But even in cases of express trusts that

presumption of law may be rebutted by acts, declarations, or conduct of the trustee inconsistent with his fiduciary character. Angell on Lim., § 472. And the open and notorious long-continued possession and acts of ownership of defendants and their vendees with respect to this property, claiming under color of title, would be sufficient to set the statute to running. Whatever effect may be given to this presumption in the case of the trustees under the express trust, or any collusive or fraudulent vendees, we stand in a very different attitude.

SIMRALL, C. J., delivered the opinion of the court.

It is conceded that the sale made by the probate court, at the instance of Robert McGinty, guardian, was void. The defendants, who derain title by *mesne* conveyances from the purchaser at the guardian's sale, rely upon the statutes of limitations of five and ten years in bar of the relief.

The complainant's title is this: In 1836 George W. Ball conveyed to R. J. McGinty the property described in the pleadings, in trust for the use of Joseph R. Kirby, Mariah Kirby, and Lidia P. McGinty (now Mrs. Parmele, the complainant), children of Hannah, the sister of the grantor, mother of the *cestui que trust*, and wife of R. J. McGinty. The property was charged with an incumbrance of several installments of purchase money due from Ball to his vendor, amounting in all to about $2,900. After these debts were paid off, then McGinty was to hold the property and apply its rents and income for the use of the *cestui que trust* during their respective minorities, and, as they attained majority, to convey the one-third interest to each, respectively.

Mrs. Parmele was born the 7th September, 1834, was married when about seventeen years of age, and is still covert. She attained majority in 1855. The debts charged upon the property were paid off in full by the trustee in 1837, by reason whereof, as the complainant alleges, the complete equitable title rested in the beneficiaries, free from all conditions and incumbrances.

The relief prayed is the cancellation of the written muni-- ments of title held by the defendant.

It is not denied that more than ten years—deducting the time of the suspension of the statute of limitations, by the act of 31st December, 1862—elapsed after Mrs. Parmele attained her majority before the institution of her suit.

The 2d article of the Code of 1857, p. 399, enacts that no person claiming any land in equity shall bring any suit to recover the same but within the period in which he might have made entry or brought suit to recover the same * * * if the estate had been legal. Prior to the revision of 1857, suits in chancery in reference to trust estates and equitable titles were not in terms embraced in the statutes of limita-- tions. The section of the Code above referred to could only operate from its date upon the complainant's title. If the case rested alone upon the statute, the time has not expired. Although statutes of limitations in terms only include reme- dies in courts of law, courts of equity, from analogy, adopted the statute and applied it to equitable titles in respect of both real and personal estate, and withheld aid from com- plainants who had slept upon their rights until an adverse possession had been held against both the trustee and cestui que trust long enough to bar the legal estate. Where the trust is direct, not dependent upon implication of law, or to be made out by evidence as between the trustee and cestui que trust, the statute does not apply. The distinction between the two sorts of trust was adverted to in Jordan v. McKenzie, 30 Miss., 35. There the complainant sought to avoid the bar set up by the purchaser of the slaves from the administrator, on the idea that he should be treated as holding the relation of trustee to the distributee in the sense that the administrator did. But it was held that whilst the administrator could not plead the statute against the distributee, a purchaser from him could.

The courts had long been vexed with the question whether, if the trustee was barred, the equitable estate dependent upon

his title was not also barred, although the *cestui que trust* might be under one of the disabilities named in the statute. Upon that point the court was divided in opinion in Bacon *v.* Gray, 23 Miss., 142. Many cases of high authority are referred to, in the judgment of the majority of the court and in the dissenting opinion, holding that if the trustee is barred the equitable right is gone also, notwithstanding the coverture or infancy of the *cestui que trust*. The majority of the court thought that the saving clause of the statute ought by analogy to include the equitable rights of those disabled to sue, as well as their legal rights. The subsequent cases of Fearn *v.* Shirley et ux., 31 Miss., 303, 304, and Pearson *v.* McMillan, 37 ib., 609, have firmly settled the principle advanced by the majority of the court in the previous case in our jurisprudence. We think the doctrine rests upon reason, and conforms to the intendment of the statute. These decisions adopt the liberal and salutary doctrine that the rights of those who are under disabilities shall not be swept away by the ignorance, the carelessness, or the negligence of trustees. Although the legal estate upon which the equitable title is grafted may have been lost, the infant *cestui que trust* shall not be prejudiced thereby, provided he asserts his title with due diligence after his disability ceases.

It was put at rest in England by the case of Eholmondely *v.* Clinton, 2 Jac. & W. Ch., 1, and in this country by Kane *v.* Bloodgood, 7 Johns. Ch., 90, that so long as the direct trust subsists it was not affected, between the trustee and *cestui que trust*, by the statute of limitations. In order that the statute may be successfully invoked there must be an adverse possession both against the trustee and *cestui que trust;* for so long as the trustee is in possession, it will be referred to his right; if the *cestui que trust*, is in, it will be attributed to his beneficial right, and is not inconsistent with the title of the trustee. But if there has been a disseizin by a stranger, who occupies adversely to both, and he holds and enjoys for the time limited, he may interpose the bar against

31

both. Lewellin v. Mackworth, 2 Eq. Ca. Ab., 579 ; Crowther v. Crowther, 23 Beav., 305 ; Fleming v. Gilmer, 35 Ala., 62. The right of entry by the trustee has been barred so that he cannot recover in ejectment, and wherever the legal right has been barred the equitable right to the same thing has been concluded by the same bar. Horenden v. Annesley, 2 Sch. & Lef., 630 ; Smith v. Clay, cited in Delorane v. Brown, 3 Bro. C. C., 639. Subject however to the qualification of the rule, established in this state—that the owner of the equitable claim is not subject to disability when the disseizin occurred and the adverse occupancy began.

Although for a time there was some vacillation in the judicial mind, it seems to be now settled and acquiesced in as the rule that if the equitable title to land be not enforced within the time that would, in corresponding circumstances, defeat the legal title, a court of equity, following the law and adopting its analogy, will decline to give relief. Bond v. Hopkins, 1 Sch. & Lef., 428 ; Medlicott v. O'Donnell, 1 Ball. & B., 156 ; Angell on Lim., § 473.

The saving clause of the statute only extends to the person to whom the right first accrues. When the statute once begins to run, it continues without interruption by a subsequent disability. The uniform interpretation put upon the British statute of James, and the American statutes drawn from that original, has been that when time has begun to run it will not stop ; and when a disability existing at the time the right accrued has been removed, the time cannot been larged and extended by adding to it a subsequent supervening disability. The general rule is affirmed in Dease v. Jones, 23 Miss., 133. If infancy were the disability when the right vested or came into existence, that disability alone should be taken into account, although the infant, before attaining majority, might become covert. That question came into judgment in Eager v. Commonwealth, 4 Mass., 182 ; Bunce v. Walcott, 4 Day (Conn.), 298, and Demorest v. Wyncoop, 3 Johns. Ch., 129. It was held in these cases that after the infant attained

majority the statute started, although the infant female married during minority. The deed made by McGinty, the guardian to Vick, the purchaser at the sale under the probate decree, conferred a color of title. Possession taken under that deed, and held by virtue of it, would be adverse to McGinty as guardian, and also as trustee. By the probate proceedings and sale McGinty attempted to alienate the title of his wards in the property, and the entry of Vick and his occupancy would have been in virtue of his right as purchaser. If there was such entry and possession it was adverse, and if he and those who derain title through and claim under him, including the defendants, have continued the possession beyond the statutory time permitted to Mrs. Parmele to enforce her title after she attained majority, then the bar set up by them is complete, and her suit must fail. Hanno v. Renfro, 32 Miss., 125 ; Wilborne v. Anderson, 38 ib., 155 ; Nast v. Fletcher, 44 ib., 617. The title from McGinty may be defective, yet possession taken under it is adverse. Angell on Lim., 435. In Jordan v. McKenzie, 30 Miss., 35, the right of the defendant was acquired by a probate sale (voidable), yet possession under it imparted color of right.

But the question of adverse possession in bar of the relief must be as distinctly averred and proved as in the ejectment suit at law, where that defense is made. The complainants do not allege that the property is held adversely, unless conveyed in these words : " that the defendants, by virtue of said deeds, claim and pretend to be the owners of said lands, by title derived through mesne conveyances from said McGinty." The defendants say that they claim under these deeds, and that they and their vendors have been in the possession of the property from their respective dates. The bill sets out the title under which defendants claim, but is silent as to the possession. We think that the defendants assumed the affirmative of that allegation, and upon them rested the necessity of making the proof. To constitute adverse possession there must be visible and notorious occupation, with a claim asserted.

Ford v. Wilson, 35 Miss., 490. Possession is referred to the right and subordination to it. To make it efficient as " adverse " it must be brought to the notice of the true owner, or the occupation must be such that a presumption may be raised of such knowledge, or that the true owner could have known it by going to or on the premises. The property must be put to some use of which it is susceptible. Huntington v. Allen, 44 Miss., 654. The defendants did not make out this defense. They rely also upon a confirmation, or an equitable estoppel precluding Mrs. Parmele from asserting title to the property, which arises, it is averred, from a sale by herself and husband of real estate in Vicksburg, bought by McGinty, guardian, for his three wards, including the complainant, with the proceeds of the lots sold by him at the probate sale to Vick, the same lots involved in this controversy.

The principle is well sustained by authority, and sanctioned by reason and conscience, that a void or voidable sale made by an executor, administrator, guardian, or other trustee may be confirmed by the devisee, heir, ward, or *cestui que trust* if, at the time of the confirmatory act, the facts were known. The principle has had application where the money arising from the sale of land has been received by the heir from the administrator, or where it has been applied in the payment of the debts of the decedent, which were a charge in law upon the land. In the latter case the heir was held bound to refund the money thus applied as chargeable upon the land. Jayne v. Boisgerard, 39 Miss., 799 ; Short, Adm'r, v. Porter, 536 ; Lee v. Gardener, 26 ib., 548 ; Kemp v. Pintard, 32 ib., 324 ; Wilie v. Brooks, 45 ib., 542.

The accounts of McGinty show that he charged himself with the money, the proceeds of the sale to Vick, and credited himself with nearly the like sum invested in the purchase of other lots, the title to which was taken to himself, upon the same trusts and uses, substantially, as in the deed from Ball to himself. This purchase was made from Vick and Brabston. The deeds exhibited with the answer disclose that after Mrs.

Parmele attained her majority, in September, 1855, she and her husband sold and conveyed these lots for a larger price than the guardian paid for them. The accounts of the guardian show an excess of credits over receipts.

These evidences prove that Mrs. Parmele has actually realized out of property, derived in part, at least, from the money received by her guardian from Vick, a sum more than equal to the price paid by Vick, and larger than the cost of the purchase with the trust funds. This is a confirmation of the voidable sale made to Vick, although Mrs. Parmele was covert at the time the confirmatory act was done. 1 Story's Eq., 385, *a*. A married woman was party to a parol partition of lands. Subsequently she sold the premises allotted to her. This affirmed the validity of the partition. Baker *v*. Lorillard, 4 Comst., 257–262. In Kemp *v*. Pintard, 32 Miss., 328, 329, the doctrine is distinctly admitted that the *feme covert* may affirm a voidable sale. Says the court, " it would require some act on her part amounting to a consent that the sale should stand, before her right would be lost."

It is further said, if she had received the purchase money, or had consented to the arrangement which her husband had made, that would have been an affirmance of the sale.

We think that the last ground of defense has been sustained, and therefore affirm the decree.

Reargument was granted, upon which SIMRALL, C. J., delivered the following opinion :

A reconsideration of this case was granted at the last term of this court on the single question of whether there had been a confirmation of the sale, made by her guardian, of lot 246, or whether anything had been done by her after she attained majority which, in equity, ought to estop her from asserting title to that lot.

The substantive allegation of the complainants is that the money derived by McGinty, guardian, was invested in the

purchase of lot 265, in square 52, of the city of Vicksburg, and that after attaining majority, to wit, in 1855, she and her husband sold and conveyed lot 265 for a full and valuable consideration, and by that act she is estopped from claiming title to lot 246. As documentary evidence there was exhibited with the answer, and read at the hearing, the deed from Brabston and wife and William Vick to McGinty, guardian, for the lot 265. This deed recited that the consideration money, $2,128.33, had been paid out of the funds of his wards, and that the purchase had been made by the direction of the probate court. Also, two deeds executed by Mrs. Parmele and her husband, in 1855, to the purchasers of one-half each of lot 265, in square 52, and that the consideration money had been paid. Also, a transcript of a settlement by McGinty, guardian, of his accounts in the probate court, which showed, under date of 13th January, 1840, he charges himself with $2,750, the proceeds of lot 246, and on the credit side of the account of $2,290, "paid Brabston and Vick for lot 265, square 42," with this memorandum underwritten: "The difference in this amount and that called for by the deed arises in an error in calculation of interest on the $2,000 due on said lot." The deed of McGinty to lot 246 and the deed to him of lot 265 are both of the *same date*, the 13th January, 1840. Report of the sale of the former and the purchase of the latter were made in the same paper, on 24th April, 1840, by McGinty, to the probate court, and was confirmed.

The summary amounts to this : that McGinty was authorized by the probate court to purchase lot 265, square 52, with the money of the wards ; the purchase was made, and the deed recites that the funds of the wards were used to pay the price. The guardian charges himself with what he received for the lot sold, and states that he had paid out the price of the lot bought.

Fifteen years after these transactions, and after Mrs. Par-

mele, one of these wards, attained her majority, she and her husband sold and received the price of her interest in lot 265, considerably in excess of what the guardian paid for it.

We are satisfied that the statement in the guardian's account, that lot 165 was in square "42," is a clerical error. The authority of the probate court was to buy lot 265 in square 52. The purchase was reported to be of that lot. The deed is for that lot. It is not pretended that any other real property was purchased for the wards. There is no room to doubt that the lot referred to in the account is the same lot mentioned in the report and the deed.

Mrs. Parmele has received the full benefit of the price obtained by her guardian for the lot sued for. She cannot retain that, and at the same time recover the property. We adopt the views of the former opinion on that subject and affirm the decree.