### GEORGE W. DYER *v.* JULIA P. WILLIAMS ET AL.

1. CHANCERY PLEADING. *Answer admitting allegations of bill and averring new matter. Evidence.*

   Where an answer in chancery, admitting the allegations of the bill, avers facts independent of and not called for by the bill, with the view of avoiding the effect of the admitted allegations, such averment cannot be taken as evidence of the truth of the facts averred; as, where a bill by the distributees of the estate of a deceased wife alleges that the defendant as her husband. received and appropriated to his own use her personal estate and has not accounted therefor to her or to them, if he admits these allegations he cannot make his answer evidence of the averment therein that his wife gave him her estate.

2. GIFT. *Of personal property. By wife to husband. Sufficiency of evidence. Case in judgment.*

   A defendant to a bill in chancery sought to avoid liability to account for personal property received from his deceased wife and appropriated to his own use, by proof of the averment in his answer that she gave him the property. In support of such averment he adduced the testimony of a lady nearly related to the deceased wife and who resided with and was a member of her family both before and after her marriage with defendant. This witness deposed that the deceased wife, on the evening preceding her marriage with defendant, came to witness to assure the latter that the contemplated marriage should not affect her position as a member of the family, and in the course of the conversation remarked that she purposed to give everything she had to her intended husband; and that after the marriage, when there was a controversy between the defendant and the wife's sons-in-law in reference to his management of the estates of her children by a former marriage, she expressed to the witness her regret at it, and said she had given everything she had to her husband, and was glad of it. *Held,* that such casual remarks, in conversations in which the mind of the wife was directed to other matters, are not sufficient evidence of a gift of her estate to her husband.

APPEAL from the Chancery Court of Panola County.

T. W. WHITE, Esq., Special Chancellor, presiding in the place of Hon. J. G. Hall, disqualified because of counsel in the case.

A statement of the case will be found in the opinion of the court.

*Taylor & Kyle,* for the appellant.

We presume that no one at this late day will contend that the

law does not grant the absolute right to dispose of property according to the judgment, free will, and desire of the owner.

If, then, such a gift will be upheld by law, how is it to be established? Will the courts look at the evidence of it and regard the testimony sustaining the donation with incredulity and distrust, or will the courts apply the same *reasonable rules of construction* and credibility which are invariably brought into requisition in other cases?

If harder or harsher rules of credibility are to be invoked and applied to the testimony which goes to uphold or establish a gift or a donation than are applied to other issues, then to that extent the *legal* and *acknowledged rights* of the *donee* are *abridged, denied,* and *destroyed,* and it would only take an extension of the same doctrine to completely and absolutely close the doors of the courts to the recipients of gifts *inter vivos.*

The testimony introduced by the appellees attempting to disprove the gift seems to us to be if relevant at all almost frivolous, and as *proof* amounts to little or nothing. On the other hand, the testimony of Mrs. McClurg is clear, positive, and to the point, and *establishes* a *donation,* and one that commends itself to our reason and common sense in view of the relation of the parties and the conditions and circumstances by which they were surrounded.

*Craft & Cooper,* on the same side.

The property in controversy was the separate estate of Mrs. Dyer under the statute and was a legal estate. *Munson* v. *Trigg,* 51 Miss. 172. It was personal property, and she could dispose of it by gift. *James* v. *Fisher,* 9 S. & M. 144. This is not questioned. Undue influence will not be presumed. *James* v. *Fisher,* 9 S. & M. 144; *Handy* v. *Van Harlingen,* 7 Ohio N. S. 208; *Dixon* v. *Dixon,* C. E. Green 91; *Orr* v. *Orr,* 8 Bush 156. In the case of *Handy* v. *Van Harlingen* the court uses this language: "The wife may deal with her husband or with her trustee in regard to her separate estate, but in either case the transaction will be watched with jealousy. There is in this case no evidence of undue influence or improper conduct on the part of either. The naked facts of the case—the release of the trustee and the binding of her

estate—cast a strong shade of suspicion over the transaction, but there is no proof in aid of it, and a decree cannot be made upon suspicion alone."

We submit that in the case at bar there is nothing that even throws a shade of suspicion on the conduct of the appellant; there is nothing that even *tends* to show undue influence or fraud upon his part. What he did was known to the wife—there was no concealment from her as to his claim, and by her silence she recognized that he was the owner. She had put the legal title in him, and he, with her knowledge, used it as his own from the time of her gift to her death, and never intimated to any of her children or any one else that it was hers.

In Leading Cases in Equity, vol. 2, part 2, p. 1215, we find this language:

"The relation of husband and wife admits of an influence that may be carried beyond just bounds, but it seems that either of the parties to it may accept a benefit from the other without being under the necessity of proving that it was not obtained by undue means. *Handy* v. *Van Harlingen,* 7 Ohio N. S. 208; *Dixon* v. *Dixon,* 7 C. E. Green 99. This is apparently because the near regard and community of interest which is presumed to subsist between persons who are so situated afford the explanation which it would otherwise be required to give."

In *Orr* v. *Orr,* 8 Bush 156, the court uses this language: " Love and affection constitute a good and valid consideration for such gifts, and will in all cases uphold a deed as against the grantor and those claiming under him."

We are aware that in Mississippi it has been decided that the presumption is against the gift of a wife's separate estate or any part thereof to her husband. *Pennington* v. *Acker,* 1 George 161; *Wiley* v. *Gray,* 7 George 510 ; *Allen* v. *Miles & Adams,* 7 George 640 ; *Burks* v. *Loggens,* 10 George 462.

We would call the attention of the court to the fact that in *every one of these cases* there was some element of *fraud,* or that an undue advantage had been sought by the husband.

If the court should hold that the presumption is against the gift,

and that the Chancellor's decision is presumptively correct, then we insist that the Chancellor's decision is against the "*weight and pre-ponderance of evidence*" and must be reversed. *Partee* v. *Bedford*, 51 Miss. 84.

*Henry Craft*, of counsel for the appellant, argued the case orally.

*Hall & Boothe*, for the appellees.

The burden of proof is upon the appellant to show that Mrs. Dyer made the gift and that it was freely and deliberately done. The rule is well stated thus:

"When one divests himself of his property or estate without receiving an equivalent, it is *incumbent on the person who receives or profits by the gift* to give such an account of the transaction as will satisfy a Chancellor that the donor was of sound mind and had a full and accurate understanding of the nature of the act and the consequences it would produce. This rule is aside from the doctrine of undue influence, and must be observed although the donee was an entire stranger to the gift and could have had no share in producing the mental condition of which it was the fruit. *Much more may be required where one accepts a benefaction from another who is subject to his control or influence,* and it may then be incumbent on the donee to show that he did not induce or prompt the act and that it was the spontaneous and unforced growth of the donor's mind. If such evidence be not adduced, and the gift is out of proportion to the donor's means, or will be prejudicial to those who have a paramount claim on his bounty, a Chancellor will infer that it is the result of undue influence although there may be no direct proof."

And a majority of the authorities declare that in cases of this nature the gift is *presumptively invalid*, even in the absence of proof, and will only be upheld upon the clearest and most satis-factory proof on the part of the donee that the transaction was fair, free from undue influence, and consistent with equity and good conscience. *Huguenin* v. *Basely*, 14 Vesey 273; annotated in White & Tudor's Leading Cases in Equity, vol. 2, part 2, pp. 1192–3; 2 Pom. Eq. Jur., §§ 956–957; *Boyd* v. *De LaMontagnie*,

73 N. Y. 498; 29 Am. Rep. 197; *Todd* v. *Grove*, 33 Md. 188; *Darlington's Appeal*, 86 Penn. St. 512; 27 Am. Rep. 726; *Pressley* v. *Kemp*, 16 S. C. 334; 42 Am. Rep. 635.

This doctrine applies fully where the relation is that of husband and wife. 2 Pom. Eq. Jur., § 963; *Smyley* v. *Reese*, 53 Ala. 89; 25 Am. Rep. 604–5; *Darlington's Appeal, supra; Boyd* v. *De LaMontagnie, supra.*

And the rule has received the unqualified sanction of the courts of this State. "Any transaction by which the title of the separate property of the wife becomes vested in the husband is regarded with scrutiny and jealousy by the courts; *and it is incumbent on the husband to show that it was fair and honest and such as in equity and good conscience the wife ought to have acceded to.* Agreement between husband and wife, in relation to her separate estate which are injurious to the wife and beneficial to the husband *will not be presumed, but every reasonable intendment will be indulged to the contrary." Pennington* v. *Acker et al.,* 1 Geo. 163; *Allen* v. *Miles & Adams et al.,* 7 Geo. 648; *Burke* v. *Loggins et al.,* 10 Geo. 464.

By the foregoing authorities and by others which need not be cited, it is settled beyond question that the burden of proof is on the husband to show the gift; that he must show all the circumstances attending the transaction, and that from the proof so adduced it must fully appear, not only that the transaction was fair and honest and the gift not out of proportion to the wife's means, but that it was " such as in equity and good conscience she ought to make." Has the appellant in this cause brought himself within these requirements? An examination of the evidence will show that he has wholly failed to make out such a case as entitles him to the protection of a court of equity.

The testimony of a single witness (Mrs. McClurg) is relied upon to prove the gift. That proof is as follows: " I heard her (Mrs. Dyer) say, before marriage, that she intended giving everything to him (appellant), and I heard her say, after her marriage, that she had given everything to him."

Upon this evidence the court is asked to *presume* (for there is no

proof on these points) that Mrs. Dyer freely, deliberately, and un-derstandingly disinherited her children by a former marriage and her child by the appellant; that the transaction was fair and honest and without undue influence on the part of the appellant; and that it was " *in equity and good conscience such a gift as she ought to make.*" No time is fixed when the gift was made; no reason is given why it was made; no solitary circumstance attend-ing the transaction is disclosed.

*J. G. Hall,* of counsel for the appellees, argued the case orally.

COOPER, J., delivered the opinion of the court.

In 1871 the appellant intermarried with Narcissa A. Hudson, the mother of the appellees, who, at the time of the marriage, was the owner of a considerable separate estate. The personal estate consisted in the main of choses in action, which came to her after her marriage as sole distributee of her mother, Mrs. Kirkwood, who had died before that time but whose estate was then being administered. She was also entitled to a distributive share in the estate of her former husband. All of this personal property was received by the appellant, and the choses in action were by him collected and the money spent.

During coverture some of the lands of the wife were sold and the proceeds of sales also came into the hands of the appellant, who used it as his own. The wife having died, the appellees, her children by the first marriage, exhibited this bill against the appel-lant to charge him as trustee of the wife's estate. The bill sets out in detail the property of the wife which had been received by the appellant, describing minutely by dates and amounts the various notes which it is charged he had received. Having averred what amounts had been thus received, the details of which were known to them, the appellees charged that the same "were the separate property of the said Narcissa A. and constituted the *corpus* of her separate estate, and that the defendant, Dyer, held the same in trust for the said Narcissa A. or became her debtor therefor, and could in no wise alter, abridge, or destroy her right thereto."

The prayer for relief contains the following prayer for discovery: " That the said defendant, Dyer, in addition to his answer to the specific allegations of this bill, may be required to answer what property of the said Narcissa A., not mentioned or indicated herein, he has received."

By his answer the defendant admitted the reception by him of a part of the property named in the bill, but denied that he had received it all, or that he had received any other thing than those charged in the bill; he exhibited a detailed statement of the property received by him and admitted that he had converted the money to his own use. He denied that he had received any part of the property or money as the trustee of the wife, but asserted the fact to be that his wife had given all said property and money to him, to be used and enjoyed as his own without any liability to account to her either as debtor or trustee. In explanation of the gift, he stated that at the time of his marriage to Mrs. Hudson she and her family had been accustomed to the ease and comfort of affluent circumstances; that the family consisted of several marriageable daughters; that the scale of expenditure incident to such style of living was great, and no change in this respect was made upon his marriage; that in view of the burden of expenses which would be imposed on him, and for the payment of certain debts which were then owing by his wife and which were afterward paid by him, and also by reason of the feeling engendered by the relation between them, his wife "gave to him to be kept and used as his own all of the money belonging to her which he received, and all that he did receive he received, not as her trustee nor to become her debtor, but as an absolute gift, to be his own. She considered and treated as his all that came to his hands, she made no claim for it or for any account of it, and she expressed to him and to others the intention and desire that it should belong to him."

The evidence by which the averment of the answer relative to the gift by the wife was sustained consisted of the testimony of a witness, Mrs. McClurg, a near relative to Mrs. Dyer, who, during the life of Mrs. Dyer, both before and after her marriage to the

appellant, was an inmate of her household and treated and considered as one of the family. This witness testified that on the evening preceding her marriage Mrs. Hudson invited her into a private room and said to her that she desired to assure the witness that her marriage should not alter the relations which had existed between them ; that she desired witness to continue as before in the family, and that she intended to give to Colonel Dyer all her property.

Some years after this, and when there was a controversy between the appellant and the sons-in-law of the wife touching his management of the property of the appellees and the guardianship of their brother, who had died, Mrs. Dyer expressed to this witness her mortification and regret, and said that " she had given everything she had to Colonel Dyer and was glad of it."

It is contended on behalf of the appellant that his answer is responsive to the bill of complaint in stating that the property of the wife was received by him, not as a trustee, but under a gift from the wife, and that this responsive allegation is supported by the testimony of Mrs. McClurg, and that the reasonableness of the gift is shown by the other circumstances set forth in the answer.

The first question is, whether the fact of the gift has been sufficiently established, and we are of opinion that this has not been done.

The bill is skillfully and carefully drawn, with the evident purpose of excluding the defendant from availing of his answer as evidence in his favor as to the manner in which he received the property of the wife. Complainants were content to rest this phase of their case upon the presumption of law which arises from the reception of the estate of the wife by the husband. They have not interrogated the conscience of the defendant in reference thereto and are not to be prejudiced by any answer not called for by them, nor can the defendant, by volunteering information not asked, give to it the weight of evidence against them. He was called upon to admit or deny only the allegations of the bill, and these were that the estate of his wife had passed into his hands and had been appropriated by him, and that he had not accounted

to her nor to her distributees.    By his answer he admits both these facts, but in avoidance of their legal effect he sets up another independent affirmative fact not charged or denied by the bill, to wit, that the wife had given him her estate.  This fact he could rely upon in his defense if established by proof, but being new matter its assertion was not evidence of its truth.   *Brooks* v. *Gillis*, 12 S. & M. 438 ; *Dease* v. *Moody*, 31 Miss.  617 ; *Parmalee* v. *McGinty*, 52 Miss. 483 ; *Park* v. *Bamburger*, Ib. 569 ; *Dodds* v. *Durbridge*, 53 Miss. 613.

The testimony of Mrs. McClurg, standing alone, is in our opinion insufficient to establish the fact of the gift.   This witness does not state that she was present when the gift was made or that it was discussed or recognized in the family.   Her only information on the subject arises from what was said by Mrs. Dyer in two isolated conversations, in each of which the mind of Mrs. Dyer was directed to other matters.   The first interview was sought by Mrs. Dyer (then Mrs. Hudson) for the sole and expressed purpose of explaining to this witness, a dependent relative, that the contemplated marriage should not affect her membership in the family ; the second conversation was in relation to the misunderstanding which existed between Colonel Dyer and his sons-in-law in reference to his management of the estates of the children. We attach but little importance to these declarations.  The circumstances under which they were made, the fact that the mind of Mrs. Dyer was directed to totally different subjects, and the doubtful import of the language used detract from their significance.

The property of husbands and wives would be held by a frail tenure indeed if casual remarks, such as those referred to by this witness, dropped in the course of conversations in the intimacy of the family circle, should be held to be sufficient evidence of transfers of estates.

*The decree is affirmed.*