## JACOB HART *v.* ELLIS BOYT ET AL.

1. LIMITATION OF ACTIONS. *New promise.   Case in judgment.*

When a note secured by mortgage was about to become barred by the Statute of Limitations, the note and mortgage were presented for payment or renewal to the makers, who wrote at the foot of the mortgage these words, signed by them under seal: " We, the undersigned, do hereby agree and promise to renew the note for which the foregoing mortgage is given, and to give a new mortgage, whenever the exact amount due upon said note is ascertained." *Held*, that the promise was, under the circumstances, sufficient in equity to take the note out of the operation of the statute; and, that a plea of

the Statute of Limitations to a bill filed to foreclose the original mortgage, after the note secured thereby had become barred, should not be sustained. *Mask* v. *Philler*, 32 Miss. 237, and prior decisions distinguished.

2. SAME.  *Essentials of new promise.*

The new promise need not express the exact amount due, but must specify the particular debt, admit its justice, and indicate an intention to pay it; but the expression of an intention to pay is not necessary, if the justice of the debt is clearly admitted without reservation.

APPEAL from the Chancery Court of Lincoln County.

Hon. THOMAS Y. BERRY, Chancellor.

*Harris & George*, for the appellant, contended that the writing put upon the mortgage by Ellis and Mary Boyt was a sufficient promise to take the note out of the operation of the Statute of Limitations; citing *Lamar* v. *Mauro*, 10 Gill & Johns. 50; *Hale* v. *Hale*, 4 Humph. 183; *Thompson* v. *French*, 10 Yerg. 452; *Rodrigue* v. *Fronty*, 2 Brev. (S. C.) 31; *Paddock* v. *Colby*, 18 Vt. 485; Chitty on Contracts (11th ed.), 1246.

*Sessions & McNair*, for the appellees.

The writing on the mortgage was not a sufficient promise to take the note out of the operation of the statute. *Davidson* v. *Morris*, 5 S. & M. 564; *Lawrence* v. *Mangum*, 30 Miss. 171; *Mask* v. *Philler*, 32 Miss. 237. The promise is indefinite, and does not come within the rule laid down in the foregoing authorities. It is also a conditional promise. At most, it is only to execute a new note and mortgage, when the exact amount of the debt is ascertained. This was only a promise to make a promise upon condition, and there is no proof of compliance with the condition, which is indispensable. 3 Parsons on Contracts, 67, 68 and note; 3 Clinton's Digest, 2108, 2109, 2111; 1 Smith's Lead. Cas. 868, 869. The condition, "whenever the exact amount due upon said note is ascertained," contemplated that Boyt should agree with Hart as to what amount was really due. It is not shown that they ever agreed as to the "exact amount due," or that the exact amount was ever "ascertained," as contemplated by Boyt. See 1 Smith's Lead. Cas. 871, 872, 875.

CHALMERS, J., delivered the opinion of the court.

A note secured by mortgage was about to become barred by the Statute of Limitations. The note and mortgage having been presented to the makers for payment or renewal, they wrote at the foot of the mortgage these words: —

" We, the undersigned, do hereby agree and promise to renew the note for which the foregoing mortgage is given, and to give a new mortgage, whenever the exact amount due upon said note is ascertained.

" ELLIS BOYT.    [Seal.]

" MARY BOYT."    [Seal.]

A statement showing the amount due on the note was afterwards presented to the parties, with a request that they would carry out this promise, which was refused. A bill being subsequently filed to foreclose the original mortgage, after the note secured thereby had become barred, a plea of the Statute of Limitations was interposed.

We think that the new promise was, under the circumstances, sufficient in the view of a court of equity to take the note out of the operation of the statute. The written promise to renew the note as soon as the balance could be ascertained was equitably a renewal of it for such amount when ascertained. It is not always essential that the exact amount due shall be specified in the new promise. It is, in fact, rarely ever done. It is sufficient that the particular debt be specified, its justice admitted, and an intention indicated to pay it, though the expression of an intention to pay would not be necessary if the justice of the debt was clearly admitted without reservation. The amount due is, ordinarily, a mere matter of calculation. *Hale* v. *Hale*, 4 Humph. 183; *Lamar* v. *Manro*, 10 Gill & Johns. 50; *Thompson* v. *French*, 10 Yerg. 452.

In *Davidson* v. *Morris*, 5 S. & M. 564, 571, the expression was that " he (the maker) recollected the note well, had thought of it often, and expected to have heard of it before; that it was a just note, but that he had offsets against it." The court said that the statement of the party that the note was just, taken by itself, might be viewed as amounting to an acknowl-

edgment of an existing debt; but that when it was remembered that in this connection he also remarked that he had offsets against it, it was impossible to give any other meaning to that statement than that the debt was originally just, which was insufficient. There was no such qualification in the case at bar.

In *Lawrence* v. *Mangum*, 30 Miss. 171, 174, the debtor had placed collaterals to the full amount of his debt in the hands of his creditor. He subsequently sought a settlement, and stated verbally that he was, or would be, indebted on the settlement. No notes or papers were present, and no settlement was had. It was properly ruled that this was not a sufficient promise to take the case out of the statute, the court seeming to rest their conclusion mainly on the failure to meet the provisions of the act of 1844, which required, in order to make a verbal acknowledgment of the debt good, that the very claim sued on must, upon a presentation of it to the debtor, be by him acknowledged to be due and unpaid. To the same effect, and upon the same ground, was the decision in *Mask and Harrison* v. *Philler*, 32 Miss. 237, 238, in which the only acknowledgment (upon an open account) was that the defendant Harrison "thought it had all been paid but a small amount;" that "he did not know exactly how the matter stood, as his copartner Mask had had the management of it, and held the receipts; but that he did not think there was more than a few dollars due on it."

None of these cases are like the one at bar. Here a note and the mortgage given to secure it were presented to the mortgagors. They admitted its justice, and, by writing under seal, promised to execute a formal renewal as soon as the amount of the credits, which had not been indorsed on the note, but which were shown by the mercantile books of the creditor, could be ascertained. Relying upon this written promise, the creditor forbore to file his bill for foreclosure until after the original debt had become barred. To allow them now to plead the Statute of Limitations would be a fraud that equity will not tolerate.

The learned Chancellor took this view of the subject on the first hearing, and rendered decree accordingly. He subse-

quently granted a rehearing, upon petition and certificate of disinterested counsel, that he was in error; and, upon the rehearing, dismissed the bill. We think his first decree was correct, and his last erroneous.

*Decree reversed, and decree of foreclosure here.*