Q. O. ECKFORD, ADMINISTRATOR, *v.* A. J. EVANS, GUARDIAN, ET AL.

1. LIMITATION OF ACTIONS. *Guardian barred. Ward's right saved.*
The failure of a guardian to sue upon a claim due his ward until his right of action as guardian is barred by the Statute of Limitations does not prejudice the right of the ward, against whom the statute does not operate until he is relieved of his disability.

2. SAME. *Right of action in ward after guardian barred. Case in judgment.*
A. J. E., being the guardian of certain minors, loaned their money, as guardian, to W. B. E., who died without having repaid it. The money was due on the 5th of June, 1873, and W. B. E. died on the 29th of June, 1876, no action having been commenced by the guardian, in the meantime, to collect the claim. The estate of the deceased was declared insolvent, and A. J. E., as guardian, filed his claim for the money loaned the decedent. The claim was allowed by the clerk of the court, and the administrator excepted, on the ground that it was barred by the statutory limitation of three years. *Held,* that, the money loaned being the property of the wards, they are the real creditors, and are not barred of their equitable right to a *pro rata* share of the fund to be distributed, even though the guardian be barred.

3. SAME. *New promise or acknowledgment in writing. Case in judgment.*
E., being indebted to H., wrote to her a letter containing the following language, which, it is claimed, was evidence of a new promise, or an acknowledgment of the debt, and took the claim out of the operation of the Statute of Limitations, which would have barred it otherwise, to wit: "I wrote to Mr. M. about the 1st inst. to know how I should send the money, and have not heard from him. I am going to A. to-morrow, and will send fifty dollars, which is all I can possibly spare at present." *Held,* that this is not a sufficient writing to affect the operation of the Statute of Limitations.

APPEAL from the Chancery Court of Monroe County.

Hon. LAFAYETTE HAUGHTON, Chancellor.

In December, 1872, Andrew J. Evans was appointed guardian of several minor children of James A. Evans, deceased.

In 1873, Andrew J. Evans loaned to W. B. Evans $3,600, which was paid to the latter on the 31st of March, the 22d of May, and the 5th of June, upon checks on a certain banking-house, drawn by Andrew J. Evans as "guardian, etc." W. B. Evans died on the 29th of June, 1876, and in August thereafter Q. O. Eckford was appointed administrator of his estate. In March, 1877, the estate of W. B. Evans was declared by the Chancery Court of Monroe County to be insolvent. A. J. Evans filed a claim against the estate of W. B. Evans, as follows:—

"*W. B. Evans, Dr.*, to *J. A. Evans, Guardian.*
    1873.
    March 31st, to check on Adams, Spratt & Co............ $2,300.00
    May 22d,      "      "      "      "      ............    800.00
    June 5th,     "      "      "      "      ............    500.00
                                                         ——————
                                                         $3,600.00"

The claim was allowed and registered by the clerk of the court. The administrator of the estate of W. B. Evans took exception to the allowance of the claim, on the ground that it was barred by the statutory limitation of three years. The chancellor overruled the exception.

Mrs. Harriet Harper (formerly Harriet Clapp) presented her claim against the estate of W. B. Evans for the balance due on a note of the decedent, payable to her, dated the 22d of March, 1869, and due one day after date. This claim was also allowed by the clerk, and the administrator excepted on the ground that it was barred by the statutory limitation of six years. A letter from W. B. Evans to Mrs. Harper, dated the 22d of May, 1874, was exhibited in evidence, to take her claim out of the operation of the Statute of Limitations. The body of the letter was as follows:—

"I am just in receipt of your favor of the 14th inst., and am surprised that you would for a moment think that I would fail to comply with my promise, without giving a reason for it. I wrote to

Mr. McKnight about the 1st of this month, to know how I should send the money, and have not heard from him. I am going to Aberdeen to-morrow, and will send fifty dollars, which is all that I can possibly spare at present."

The chancellor overruled the exception to this claim also. From the decree overruling the exceptions to both claims the administrator appealed.

*Houston & Reynolds*, for the appellant.

1. Where a guardian lends the money of his ward, the guardian is responsible to the ward, and the borrower to the guardian. No one but the guardian can sue for the money loaned. It cannot be denied that the guardian had the right to sue on the claim in controversy here. But his right of action had become barred. The wards could have no right of action till after a settlement of the estate, and no settlement is shown by the proof. *Fountain* v. *Anderson*, 33 Ga. 379; *Coleman* v. *Walker*, 3 Metc. (Ky.) 65; *Wingfield* v. *Virgin*, 51 Ga. 142; *Darnall* v. *Adams*, 13 B. Mon. 273; *Couch* v. *Couch*, 9 B. Mon. 161; *Worthy* v. *Johnson*, 10 Ga. 358.

2. The loan by A. J. Evans, guardian, to W. B. Evans, without any note or security being taken therefor, was an unauthorized investment of the money of his wards. Code 1871, sect. 1217. It was not binding on the wards, and the guardian is liable to them on his official bond, for neglect. The debt was to the guardian, and he alone can sue for it.

3. The letter of W. B. Evans was not sufficient evidence of a new promise, or acknowledgment of the debt to Mrs. Harper, to prevent the bar of the note by the Statute of Limitations. 6 Ga. 21; 22 Ark. 290; 23 Conn. 453; 37 Ala. 385; 29 Ala. 99; *Davidson* v. *Morris*, 5 Smed. & M. 564; 12 Smed. & M. 663; 24 Miss. 92, 389; *Davidson* v. *Harris*, 33 Miss. 41.

*Baxter McFarland*, on the same side.

1. Sect. 2156 of the Code of 1871 only applies to save the rights of persons under some legal disability. It must be ad-

mitted that the guardian had the right and the ability to sue on the claim in this case. The guardian seeks the collection of the claim, and his right of action is barred. 3 Metc. (Ky.) 63; 51 Ga. 142; 13 B. Mon. 273; 9 B. Mon. 161; 10 Ga. 358.

2. The letter of W. B. Evans, deceased, to Mrs. Harper, was not " an express acknowledgment of the debt, or an express promise to pay it." *Davidson* v. *Morris*, 5 Smed. & M. 564; *Smith* v. *Westmoreland*, 12 Smed. & M. 663; *McCullough* v. *Henderson*, 24 Miss. 92; *Anderson* v. *Robertson*, 24 Miss. 389; *Davidson* v. *Harris*, 33 Miss. 41.

*R. O. Reynolds*, of counsel for the appellant, argued the case orally.

*Murphy, Sykes & Bristow*, for A. J. Evans, guardian, appellee.

1. The Statute of Limitations does not run against infants. They are especially excepted from its operation. *Bacon* v. *Gray*, 23 Miss. 145; *Fearn* v. *Shirley*, 31 Miss. 301; *Adams* v. *Torrey's Executors*, 26 Miss. 499; *Pearson* v. *McMillan*, 37 Miss. 588. This is an equitable proceeding for the *pro rata* distribution of an estate amongst the *bonâ fide* creditors of the decedent. The minors, in this case, are propounding their claim through their guardian. The court will view them as the real owners of the claim, and viewing them as the beneficiaries, will distribute to them their *pro rata* of the fund.

2. There is no proof that the guardian loaned the money of his wards without authority of law; but if he had done so, he would have had the right instantly to sue for and recover it, in his official capacity. *Worthy* v. *Johnson*, 10 Ga. 358; *Paschal, Admr.*, v. *Davis*, 3 Ga. 256; *O'Neal* v. *Abney*, 2 Bailey, 317; *Knox* v. *Jenks*, 7 Mass. 492.

*White & Bradshaw*, for Harriet Harper, appellee.

It is not necessary, under our statutes, that there should be a new promise in writing, to take the case out of the Statute of Limitations; but an acknowledgment of the debt in writing,

signed by the party to be charged, is sufficient.   Code 1871, sect. 2165 ; *Shackleford* v. *Douglass*, 31 Miss. 95 ; *Barnard* v. *Bartholomew*, 22 Pick. 291 ; *Allen* v. *Webster*, 15 Wend. 284 ; 17 Wend. 514 ; 2 Mass. 217 ; *Wilby* v. *Elgee*, L. R. 10 C. P. 497.   W. B. Evans not only acknowledged the debt to Mrs. Harper, but at the same time paid her a part of the money due.   It is not necessary that the acknowledgment should be of any precise amount.   3 Pars. on Con. (5th ed.) 69, note *a ;* Throop on Verbal Agreem. 502, note *a*.

*E. H. Bristow,* of counsel for the appellees, argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

In 1873, Andrew J. Evans, guardian of his wards, loaned to W. B. Evans, in the aggregate, $3,600.   The money was paid to W. B. Evans on three several checks, drawn by A. J. Evans, *guardian*, on Adams, Spratt & Co., bankers.   The money loaned was derived from a policy of insurance on the life of James A. Evans, deceased, for the benefit of his wife and children.   The guardian had money to his credit, in his fiducial character, with these bankers.

We are satisfied that the testimony satisfactorily establishes the above facts, though there is some controversy about them.

The allowance of the claim to share in the distribution of the insolvent debtor's estate was contested because it was barred by the three years' Statute of Limitations, the argument being that it was founded on open account, and is governed by sect. 2151, Code 1871.   The administrator and exceptor insists that the claim is an " open account," to which the last clause of the section applies.   On the other side, it is contended that it is embraced in the words " contract or liability, expressed or implied," and is not barred until six years, etc.

It is further insisted that it is immaterial which limitation applies ; that the creditors are the wards of the guardian, who were, and are, under the disability of infancy, and are within the saving clause of the Statute of Limitations.

There are a series of cases in our books, beginning with *Bacon* v. *Gray*, 23 Miss. 143, which have placed a construction on the saving clauses of the Statute of Limitations in favor of infants and married women, which protect their interests, which would otherwise be lost through the negligence or laches of their trustees. They announce the principle that although the legal right may be barred, yet that does not operate as a bar also of the beneficial interest or estate, if the owner was under one of the disabilities of infancy, coverture, etc. Speaking of the extent of the saving, the language in the case cited is, that it is " general,     *     *     *     and operates against all persons.     *     *     *     To hold that time does create a bar against infants in certain cases is to interpolate on the statute." The reasoning of the court is on the postulate that the infant is unable to contract, or, in his own name, to bring to his aid any of the processes of the court. There must intervene between himself and his property, or rights, or interests, a trustee. Indeed, the law forces his property into the hands of some sort of trustee, and one of the purposes of the saving was protection against the negligence and mismanagement of guardians, and others in like relation. The meaning of the statute, in these clauses, is summed up to be, that " the rights of persons laboring under disabilities shall not suffer in consequence of such disabilities." This case was followed by *Fearn et al.* v. *Shirley et al.*, 31 Miss. 301; *Pearson* v. *McMillan*, 37 Miss. 609; *Anding* v. *Davis*, 39 Miss. 574; *Parmele* v. *McGinty*, 52 Miss. 481. In various circumstances this court has, over and over again, asserted that the rights of those under disability shall not be swept away by the ignorance, carelessness, or negligence of trustees; and that, although the legal title may be barred, the equitable estate which was grafted upon it shall not be prejudiced thereby.

These doctrines have not been questioned in this case; but it is argued that they have no fitness to this contestation. The effort of counsel was to place the guardian in the category of plaintiff in a court of law, suing to recover the money back.

But is not that a much narrower view of the real question than was taken in *Pearson* v. *McMillan, supra?* There the recovery would have enured to the ward. She was regarded as " the real party to the action," and " no defence to the merits can prevail unless it be a bar to it, considering the suit as brought by the ward, — the real plaintiff."

Stripping the transaction in question of all disguises of form, and we see that the guardian of the wards had on deposit in bank, in his name as guardian, a large sum of money. This money was derived from a policy of insurance for their benefit. Evans, the guardian, loaned this identical fund of his wards to the intestate. The money was paid to him, or his order, on the checks signed by the guardian. It was never repaid by the intestate in his lifetime; it has been pressed, as a probated claim, against the insolvent estate.

The fund loaned belonged to the wards; its administration pertained to the guardian.

The wards, through their guardian, give the Chancery Court to know that the intestate was debtor to them, as the borrower of their money. This is resisted because the guardian may be barred of a suit at law. Whilst that might be so, the estate would continue the debtor of the minors, and their equities would not be prejudiced thereby.

A court of equity ought, especially in this case, to look through all forms, and seize upon the substantial merits.

The borrower of their money has died, his estate is insolvent, and a distribution *pro rata* is about to be made among its creditors. The real creditors (as to this claim) are the infants. Their beneficial and equitable rights are not barred, and it was right to award them a *pro rata* share of the fund. A payment of it to their guardian is a payment to them. If that redress were denied in this proceeding, the infants would remain creditors of the intestate until their majority, and longer, with a right to recover the debt. Yet, with such ultimate right, if the court refuses them all share in the distributive fund, that is neither reasonable nor just.

We think that the chancellor was right in holding them entitled to participate in the distribution. The chancellor was of opinion that a letter of the intestate, read at the hearing of the exceptions, was sufficient to take the claim (a note) due to Mrs. Harper out of the Statute of Limitations.

The principle stated in *Trustees of Canton Female Academy* v. *J. J. Gilman*, 55 Miss. 148, is that the writing, to have the effect of a new promise, or of a waiver of the statute, must identify the debt to which it relates, with such definiteness as to the amount due, and the creditor, that nothing important is left open to further testimony. This rule is deduced from *Lawrence* v. *Mangum*, 30 Miss. 171, and *Mask & Harrison* v. *Philler*, 32 Miss. 237. The case of *Hart* v. *Boyt*, 54 Miss. 550, stands on its peculiar facts. The writing indorsed on the mortgage was for the very purpose of waiving the statute. The debt was admitted, subject to certain credits, which would be shown on the mercantile books of the creditor. The debt was identified, and there was no dispute about the credits.

The letter of the intestate, W. B. Evans, dated 22d May, 1874, does not refer to any particular indebtedness; nor, indeed, to any debt whatever, except inferentially. The only allusion, directly, to pecuniary matters at all, is in these words : —

" I wrote to Mr. McKnight about the 1st of this month to know how I should send the money, and have not heard from him. I am going to Aberdeen to-morrow, and will send fifty dollars, which is all I can possibly spare at present," etc.

This is not such written waiver or promise as is intended by the statute. It was error, therefore, to have overruled the exception to the allowance of Mrs. Harper's claim as a creditor.

So much of the decree as overruled the exceptions to the indebtedness to A. J. Evans, guardian, and allowed said claim as a debt of the intestate, and entitled to share in the distribution, is affirmed. So much of the decree as overruled the

exceptions to Mrs. Harper's debt, and established it against the estate, is reversed. A. J. Evans, guardian, to recover his costs in this court and the Chancery Court; Mrs. Harper to be taxed with costs.